**UNITED STATES of America, Plaintiff–Appellee,**

v.

**John David STONE, Defendant–Appellant.**

No. 87–2858.

United States Court of Appeals, Tenth Circuit.

Jan. 25, 1989.

---

**360**

Edmund J. Lang, Albuquerque, N.M., for defendant-appellant.

Mark Jarmie, Asst. U.S. Atty., Albuquerque, N.M. (William L. Lutz, U.S. Atty., and Larry Gomez, Asst. U.S. Atty., Albuquerque, N.M., were also on the brief), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, BRORBY, Circuit Judge, and ANDERSON, District Judge.*

---

* The Honorable Aldon J. Anderson, United States District Judge for the District of Utah, sitting by designation.

HOLLOWAY, Chief Judge.

John David Stone challenges on appeal the trial court's denial of his motion to suppress narcotics seized by police and statements he made during and following a search of his automobile. After the motion was denied, Stone was convicted on a jury verdict of possession with intent to distribute methaqualone in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting in violation of 18 U.S.C. § 2. We affirm.

## I

### A.

On 11 February 1987, defendant Stone and Athena Anderson were driving west on Interstate 40 in New Mexico when Officer Clayton of the New Mexico State Police stopped them for speeding. While Officer Clayton was writing the citation, he smelled an odor he thought was either cocaine or crystal methadrine coming from the car. Stone reacted nervously when Clayton accused him of carrying narcotics. When Stone refused to consent to a search of the car, Officer Clayton told Stone to follow him to the police station in nearby Moriarity, New Mexico, where Clayton would get a warrant to search the car. II R. at 29, 33. In Moriarity, Officer Clayton called agent Small of the Drug Enforcement Administration and requested a background check on Stone. Agent Small told Clayton the DEA "had been doing surveillance on [Stone] for drug trafficking." With these facts, Officer Clayton went before a state magistrate and requested a search warrant for Stone's car. The magistrate refused to issue the warrant. *Id.* at 35. Clayton then released Stone.

When agent Small discovered Stone had been released, he telephoned Detective Nagee of the Albuquerque Police Department. Agent Small asked Detective Nagee "if they could possibly obtain a narcotics sniffing dog and stop the vehicle as it came into Albuquerque." *Id.* at 59. Officer Jones was called by another officer and advised

that they were possibly going to stop the car. Jones proceeded to the area of Interstate 40 just east of Albuquerque and set up his radar. *Id.* at 76. Jones testified that his radar detected Stone traveling 65 miles per hour in a 55 mile per hour zone. *Id.* at 78.

Jones testified that Stone said he was not speeding and that he had been stopped earlier. *Id.* at 86. The government's witnesses testified that Officer Jones asked to see the ticket. Stone replied that it was in the rear of the hatchback. Jones reiterated he would like to see the citation. Tr. at 87. Stone got out of the car, opened the hatchback, and retrieved the ticket. *Id.* at 88. Sometime during this encounter, several other Albuquerque police officers arrived at the scene and engaged Stone and Athena Anderson in conversation. Within a few more minutes another police officer arrived with the dog. The dog circled the car, showed interest underneath the rear area of the car and at the passenger door, and then jumped in the open hatchback where he "keyed" on a duffel bag. *Id.* at 101, 120–121. The police then searched the entire car and the duffel bag. *Id.* 101–102. The bag contained approximately 33,000 methaqualone tablets. IV R. at 182.

Stone also testified at the suppression hearing. He denied that he had been speeding when he was stopped by Officer Jones. Stone said after he got the ticket at Moriarity he figured he was being followed and was very careful and set his cruise control at 55 miles per hour. He testified that his radar detector never gave an indication that radar had spotted him. II R. at 146, 149.

Stone also denied he had consented to the search of his car and said no one ever asked whether they had permission to search it. *Id.* at 147, 148. Stone said he opened the trunk of his car because the Officer insisted on seeing the citation he had received; he understood that he had no options at that point and that the Officers were going to get into his car. Stone said he was detained about two and a half hours in Moriarity and it was probably an hour and a half following his departure from

Moriarity when he was stopped again. *Id.* at 147.

Stone was indicted for possession with intent to distribute methaqualone in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2. I R. at 1. Stone's pretrial motion to suppress the narcotics alleged that both the stop of his car and the subsequent search violated the Fourth Amendment. I R. at 5. (Motion to Suppress—Automobile Search and Supporting Authorities); I R. at 6 (Motion to Suppress—Automobile Stop and Supporting Authorities). The trial judge denied the motion. Stone was then tried before a jury and convicted. I R. at 26. Stone claims the trial court erroneously denied his motion to suppress the narcotics.

### B.

At the conclusion of the suppression hearing, the trial judge orally stated his findings and conclusions in support of his ruling denying Stone's motion to suppress. II R. 153 et seq.

The judge found there were two trains of events involved. He found the second stop on Interstate 40 at Albuquerque was a legitimate traffic stop; Officer Jones' radar detected defendant traveling 65 miles per hour in a 55 mile per hour zone. The stop was not pretextual, but a legitimate traffic stop. *Id.* at 154.

The other train of events was initiated at Moriarty by Officer Clayton. The judge found that facts obtained by police during this train of events gave them a reasonable suspicion Stone was transporting drugs in his car, which prompted them to call for the assistance of the narcotics dog at Albuquerque. *Id.* at 155. When the dog was commanded to sniff the car he became interested underneath the car at the passenger side where the door was open. Then when he came to the back of the vehicle he jumped into the open hatchback. The dog keyed, the handler testified, on substances he was trained to detect, including methamphetamine and the other controlled substances. *Id.* at 156. The judge found that these actions by the dog gave the police

probable cause to search the automobile. *Id.* at 55.

The judge found further that the dog's leap into the back of the car did not vitiate the seizure, regardless of whether or not it was a search. The judge found that the defendant voluntarily opened the hatchback to retrieve the citation requested by Officer Jones. *Id.* at 156. Then the dog came along and "on his own, apparently jumped into the back of this car and immediately found what is sought to be suppressed here." *Id.* at 156–157. The judge found that in these circumstances the search and seizure did not violate the Fourth Amendment. He therefore denied the motion to suppress the narcotics found in the automobile and statements made at the time of the seizure.

## II

The Fourth and Fourteenth Amendments protect the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Officer Jones seized Stone and his car and the police discovered the narcotics during a search of Stone's car. *Berkemer v. McCarty*, 468 U.S. 420, 436–437, 104 S.Ct. 3138, 3148–3149, 82 L.Ed.2d 317 (1983) ("stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth] Amendmen[t], even though the purpose of the stop is limited and the resulting detention quite brief.") *New York v. Class*, 475 U.S. 106, 115, 106 S.Ct. 960, 966, 89 L.Ed.2d 81 (1986) (when police moved papers on a car's dashboard to uncover the vehicle identification number they conducted a "search" within the meaning of the Fourth Amendment). The issues presented here are whether the seizure or the search were unreasonable within the meaning of the Fourth Amendment. If either was unreasonable, the narcotics and the statements may not be used as evidence against Stone. *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (evidence obtained by state Officers which violated the defendant's Fourth and Fourteenth Amendment right to be free from unrea-sonable searches and seizures is inadmissible in a federal criminal trial).

### A. The Seizure

■ Stone argues that Officer Jones stopped him for speeding merely as a pretext to give the narcotics dog an opportunity to sniff his car. The district court, however, found the stop justified on an alternative ground: the police had reasonable suspicion to believe Stone was transporting narcotics. Because we hold the stop was justified by this reasonable suspicion, we need not decide whether the speeding ground was a pretext.

Police may stop and detain an automobile and its occupants if they have an articulable and reasonable suspicion that the car is carrying contraband. *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). We agree that the Officers' actions were lawful here.

First, here the judge found there was the presence of the Patchouli oil which, it was testified, was a type of substance emitting a very strong and distinctive odor and is used to shield or mask other smells. II R. 155. The testimony of Officer Clayton supports this finding; the oil was shown to Clayton by defendant and Clayton learned it was sold and used in California, mainly to cover up the smell of marijuana. II R. 36, 52.

Second, a DEA computer indicated that Stone had been "involved in a case in Tucson." II R. 57. And upon inquiring further of the DEA office in Tucson, agent Small learned that they suspected Stone of being involved in a cocaine smuggling ring and that he associated with people who were known methamphetamine dealers. This finding is supported by the record testimony of agent Small. II R. at 57–58.

In sum, the finding of reasonable suspicion supported the stopping of the car at Albuquerque and the call for the narcotics dog.

### B. The Search

■ Even though the police legally stopped Stone, the drugs are inadmissible

against him unless the search during which they were seized was legal. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is per se unreasonable ... subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). The police had no warrant to search Stone's car. Their search, therefore, was unreasonable unless justified by an exception to the search warrant requirement.

Stone contends that police use of the narcotics dog to sniff his automobile was a search within the meaning of the Fourth and Fourteenth Amendments.[1] We disagree. Upon reasonable suspicion, police may temporarily detain luggage at an airport. Under such circumstances, police use of a narcotics dog to sniff the luggage is not a search. *United States v. Place,* 462 U.S. 696, 706–707, 103 S.Ct. 2637, 2644–2645, 77 L.Ed.2d 110 (1983); *United States v. Williams,* 726 F.2d 661, 663 (10th Cir. 1984). Likewise, we think police may employ a narcotics dog to sniff an automobile which they have stopped upon reasonable suspicion to believe it contains narcotics.[2] Under these circumstances, police use of a narcotics dog is not a search requiring a search warrant or probable cause. *See United States v. Hardy,* 855 F.2d 753, 758–759 (11th Cir.1988) (canine sniff of an automobile detained upon reasonable suspicion to believe it contains narcotics is not a search within the meaning of the Fourth Amendment).

■ Even though the police could use a trained dog to sniff the exterior of Stone's automobile, the dog created a troubling issue under the Fourth Amendment when it entered the hatchback. People have a reasonable expectation of privacy in the interi-

ors of their automobiles; police may not search an automobile unless they have probable cause to believe it contains contraband. *Almeida–Sanchez v. United States,* 413 U.S. 266, 269–270, 93 S.Ct. 2535, 2537–2538, 37 L.Ed.2d 596 (1973) ("Automobile or no automobile, there must be probable cause for the search.").

The trial judge found that the dog "became interested underneath the passenger side of the automobile," but apparently did not positively "key" on the methaqualone until he was inside the car. This interpretation of the judge's findings is supported by the following exchange between the court and defense counsel just before the judge denied the motion to suppress:

MR. McCUE: [I]t's our contention that the dog sniff in this case was a search, that the dog intruded upon the area where Mr. Stone had a legitimate expectation or reasonable expectation of privacy.

THE COURT: You think the exclusionary rule is intended to exclude a dog from jumping into a place that's open where a smell or an odor is emanating from as described in these circumstances?

MR. McCUE: Yes, sir.... I think that—my impression is that the state is saying that the dog supplies probable cause, whereas that's putting the cart before the horse.

The dog was the one who was doing the searching....

THE COURT: Well, I disagree.

Considering the above colloquy, and the uncertain testimony regarding when the dog's responses were sufficiently positive to provide the police with probable cause, we think the trial judge based his ruling on the assumption the dog did not positively

---

1. Stone relies on *United States v. Thomas,* 757 F.2d 1359, 1366–1367 (2d Cir.), *cert. denied sub nom. Fisher v. United States,* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985), which held that use of a dog to sniff for narcotics at a defendant's apartment violated Fourth Amendment principles. Such a case, based as it was, on the "heightened expectation of privacy" in the home, is distinguishable.

2. As in *Williams,* we need not decide whether police must have a reasonable suspicion before employing a narcotics dog to sniff a car because we hold there was reasonable suspicion in this case. *See Williams,* 726 F.2d at 663.

"key" until he was in the hatchback. Thus, when the dog jumped into the hatchback of Stone's car the police had only reasonable suspicion to believe it contained narcotics. Only after the dog was in the trunk, where it "keyed" on the methaqualone, did the police have probable cause to search the car.

We agree with the district judge that the dog's instinctive actions did not violate the Fourth Amendment. There is no evidence, nor does Stone contend, that the police asked Stone to open the hatchback so the dog could jump in. Nor is there any evidence the police handler encouraged the dog to jump in the car. II R. at 124, 128. The judge asked the Officer in charge of the dog: "So you didn't encourage him or discourage him from jumping into the back?" And the Officer replied: "That's correct. I just let his leash go and let him go where his nose would take him." II R. 128. In these circumstances, we think the police remained within the range of activities they may permissibly engage in when they have reasonable suspicion to believe an automobile contains narcotics.

Once the dog "keyed," the police had probable cause to believe the automobile contained narcotics. *Williams*, 726 F.2d at 663. Thereafter, the search of Stone's car and the duffel bag in which the narcotics were found was justified by the "automobile exception" to the search warrant requirement. The automobile exception justifies a police search of an automobile travelling on the highway, including all containers therein, upon probable cause to believe it contains contraband. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982) ("if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."). Therefore, the search of Stone's car and the duffel bag was not unreasonable within the meaning of the Fourth Amendment and did not render the narcotics seized or statements uttered inadmissible.

III.

No reversible error is demonstrated and the judgment is accordingly

AFFIRMED.