BRISCOE, Circuit Judge,
dissenting:
I respectfully dissent. I believe United States v. Stone, 866 F.2d 359, 364 (10th Cir.1989), controls the outcome of this case and cannot be distinguished. Further, I believe the majority is mischaracterizing the district court’s findings and conclusions regarding Winningham’s consent. The court did not conclude Winningham’s consent to use of a drug detection dog was involuntary, but rather it concluded the dog’s entering the van exceeded the scope of the consent voluntarily given. Specifically, the court concluded Winningham’s consent to “run a dog on the vehicle” was not a consent to permit the dog to enter the vehicle. Therefore, by reviewing a conclusion that Winningham’s consent was involuntary, the majority is reviewing a conclusion the district court did not make.
In Stone, we affirmed the district court’s decision to deny suppression of evidence located by the instinctive actions of a drug detection dog. We agreed with the conclusion of the district court in Stone that the dog’s instinctive actions did not violate the Fourth Amendment. As in the present case, the court there did not find the dog handler had encouraged the dog to jump into the vehicle. In reviewing the district court’s denial of Stone’s motion to suppress, we considered the totality of the circumstances and viewed the evidence in a light most favorable to the government. See United States v. Wood, 106 F.3d 942, 945-46 (10th Cir.1997). Similarly, in reviewing the district court’s suppression of the marijuana located in Winningham’s van, we view the evidence in a light most favorable to Winningham, accept the court’s factual findings, unless clearly erroneous, and review the court’s legal conclusions de novo. Id. As in Stone, we are not permitted on appeal to judge the credibility of witnesses, determine the weight to be afforded testimony, or draw reasonable inferences or conclusions from the testimony, as these are matters within the exclusive province of the district court. See United States v. Gutierrez-Daniez, 131 F.3d 939, 940 (10th Cir.1997).
The majority holds Stone does not apply because Agent Palacios, the canine handler, encouraged the dog to jump into Winning-ham’s van. The district court did not make a factual finding that Agent Palacios encouraged the dog to enter Winningham’s van and a review of the record further refutes this conclusion. As regards the actions of the officers prior to the dog’s entry into the van, the court found: “As Agent Palacios brought [the dog] around the back of the Van, the dog began ‘to act on his own.’ Agent Palacios then released Sam who ran inside the Van through the door Agent Almengor had opened and began pawing a vent in the rear of the Van.” Record I, Doc. 46 at 2. The majority describes the path of the dog around the van and concludes since Agent Palacios unleashed the dog near the open door of the van, he encouraged the dog to enter the van. However, Agent Palacios testified:
Q. ... Now, you ran the dog, you said, starting at the left front end?
A. Yes, sir.
Q. And which direction did the dog go from there?
A. We started going south, working towards the back of the vehicle, and then around.
Q. Through the side of the driver?
A. Right.
■ Q. Okay.
A. On the left side.
Q. When you run the dog around the vehicle, is the dog on a leash?
A In that case, being so close to the interstate, I keep the dog on the leash.
Q. So now you’re walking the dog around on the leash, and you said there was a JND [Just Noticeable Difference]? ....
A. On the back, once he got towards the back, he started to show—it’s something that you notice that the dog does, like he starts working a scent.
*1334 Q. What specifically can you recall on that?
A. He started going up and down, back underneath, and working where he went into the vehicle on his own. He jumped into the vehicle, working the scent.
Q. You allowed him to do that since he was still on a leash; is that correct?
A. I let him go.
Q. He was off the leash then?
A. Once he started working and he was off the interstate side, I let him go.
Record II at 51-52. Thus, the record clearly reflects Agent Palacios led the dog around the entire length of the van, unleashing him at the back of the van only after he had alerted and was no longer in danger of being struck by oncoming vehicles. Even viewing the evidence in a light most favorable to Winningham, the record does not support the conclusion that Agent Palacios unleashed the dog near the open door of the van, thereby encouraging the dog to enter the van.
Regardless of the path taken around the van, the district court did not find and the record does not demonstrate that Agent Palacios encouraged the dog to jump into the van. Agent Almengor already had opened the side door of the van to look inside for illegal aliens before the drug detection dog arrived. He testified that “[t]he dog just, on its own, went into the vehicle because the side door that I had opened was left open.” Id. at 27. These circumstances are indistinguishable from those in Stone where the canine handler testified he unleashed the dog and “let him go where his nose would take him.” 866 F.2d at 364. The distinction that here Agent Almengor opened the side door of the van while in Stone, defendant himself opened the hatchback of his ear, is insignificant. Winningham consented to Agent Almengor opening the side door of the van.
To reach the conclusion that the agents did not encourage the drug detection dog to enter Winningham’s van, one need not judge the credibility of witnesses, determine the weight to be afforded testimony, or draw inferences or conclusions from the testimony. This conclusion is based upon the district court’s factual findings. Viewed in a light most favorable to Winningham, the court did not find the agents encouraged the dog to enter the van. Instead, the court found when Agent Palacios brought the drug detection dog around the van, “the dog began ‘to act on his own.’” Record I, Doc. 46 at 2.
The majority also states that “the range of acceptable police activity in the absence of reasonable suspicion may differ considerably from the range of acceptable police activity in the presence of reasonable suspicion.” Majority Op. at 1331. Therefore, the majority reasons since the agents did not have reasonable suspicion to detain Winningham when the dog jumped into the van, Stone does not control. The district court did not distinguish Stone on these grounds but if it had, we would review the conclusion de novo.
If officers have reasonable articulable suspicion that an individual is committing or has committed a crime, they are permitted to take actions that would be impermissible in the absence of reasonable suspicion. Boiled down to its essential premise, that was the Supreme Court’s holding in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The majority relies on this basic premise to distinguish the acts of the officers in Stone with those of the officers here. However, the majority’s conclusion ignores the fact that Winningham gave consent to the investigating officers to look in the back of his van and “to run a dog” on the vehicle. Record II at 12. The range of acceptable police activity is arguably broader when consent has been given by the suspect than when the police merely have reasonable articulable suspicion that a suspect is violating the law, as was the case in Stone. The majority’s decision to ignore the fact that Winningham gave his consent and to focus on the fact that the agents did not have a reasonable articulable suspicion that Winning-ham was engaged in illegal activity when the dog was used is especially troubling here because the police had a reasonable articulable suspicion that Winningham was transporting illegal aliens and narcotics when his vehicle was initially stopped.
I also disagree with the basic foundation of the majority’s opinion—that Winningham’s consent was involuntary. The majority *1335 states the district court made an “oral finding [of fact] ‘that there was no voluntary consent for the dog to enter the cabin;of the van,’ ” and then reviews this finding for clear error. Majority Op. at 1331. .1 read the court’s oral statement and written findings differently. In its written findings, the court clearly stated it was suppressing the marijuana- because the officers exceeded the scope of Winningham’s consent, not because his consent was involuntary. Specifically, the court stated the circumstances surrounding Winningham’s detention and questioning “raise[ ] a question as to whether Defendant ... felt compelled to permit the dog ‘on the Van’, [but] this Court did not grant the motion on this basis.” Record I, Doc. 46 at 2 n. 1 (citation omitted).
Since the district court did not find Winningham’s consent was involuntary, this court is not required to accept this fact and review for clear error. Instead, the court implicitly found consent was voluntary. This finding should be accepted by this court absent clear error. See United States v. Pena, 920 F.2d 1509, 1514 (10th Cir.1990). I would conclude the district court’s implicit conclusion that Winningham’s consent was voluntary is not clearly erroneous. Instead, I believe the government established his consent was obtained without “duress or coercion, express or implied.” United States v. McKneely, 6 F.3d 1447, 1453 (10th Cir.1993).
I would conclude Winningham voluntarily consented to a limited search of his van and that the instinctive actions of the dog during that limited search did not violate the Fourth Amendment under Stone. Accordingly, I would reverse the district court’s order suppressing the marijuana.