**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 12, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

GEORGE R. LUJAN,

     Defendant-Appellant.

No. 09-2193 & 09-2194
(D.C. Nos. CR-98-00864-LH-1
& CR-08-01843-LH-1)
(D.N. Mex.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **HOLLOWAY**, Circuit Judge, and **MELGREN**, District Judge.[**]

     George Lujan was convicted by a jury on one count of possessing 100 or more grams of heroin with intent to distribute and one count of possessing 500 or more grams of cocaine with intent to distribute, both in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Following these convictions, the district court also revoked his supervised release. The sole issue briefed on appeal is whether the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable Eric F. Melgren, United States District Judge for the District of Kansas, sitting by designation.

district court erred in denying Lujan's pre-trial motion to suppress the cocaine found in his automobile. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

# I

## *Factual Background*

On July 14, 2008, Detective Pat Ruiloba of the Albuquerque Police Department received a phone call from an FBI agent who indicated that she had just seen Lujan participate in what appeared to be a drug transaction at an Albuquerque shopping mall. The agent gave Ruiloba the name of the shopping mall and the make, model, color, and license plate number of the automobile Lujan was driving as he left the mall. Shortly after receiving this call, Ruiloba observed a vehicle matching this description traveling southbound on Interstate 25. Lujan was the driver of this vehicle. Ruiloba testified at trial that his radar detected Lujan driving at a speed of seventy-five miles per hour in a fifty-five miles per hour construction zone. As Ruiloba was about to pull the vehicle over, Lujan turned off of the highway. Ruiloba followed Lujan, activated his lights, and pulled Lujan over.

Ruiloba approached the vehicle from the passenger side and asked Lujan if he knew why he had been stopped. Lujan replied that he did not. Ruiloba informed Lujan that he had been speeding in a construction zone. Ruiloba then asked Lujan for his driver's license, proof of insurance, and vehicle registration

2

form.  Lujan was able to locate his driver's license and proof of insurance, but could not find his registration.  Lujan then began searching the vehicle's glove compartment in an attempt to find his registration.

Ruiloba testified that as Lujan was searching for his registration, he "lean[ed] over towards the passenger's side floorboard of the vehicle, and . . . kind of shov[ed] a white plastic bag under the seat."  ROA Vol. 3, at 78.[1]  Ruiloba asked Lujan if "everything was okay," and Lujan responded that it was.  Id. at 79.  Ruiloba next asked Lujan to step out of his car.  Lujan complied and followed Ruiloba back to the police vehicle.

Ruiloba proceeded to engage Lujan in casual conversation, asking him where he was coming from and where he was headed.  Eventually, Ruiloba again asked Lujan for his vehicle registration.  Lujan stated that he did not have it, and he asked Ruiloba for permission to return to his car to continue looking for it.  Ruiloba consented and the two men walked back to the passenger side of Lujan's vehicle.  Lujan opened the front passenger door, leaned in, and began to search the glove box for his registration.  Ruiloba noticed at this point that Lujan's hands were visibly shaking and that he appeared to be very nervous.

Believing that Lujan was not going to be able to locate his vehicle registration, Ruiloba asked Lujan to return to his patrol car.  Lujan complied.

---

[1] Two consolidated appeals are before us.  All citations to the record on appeal are from the record in Case No. 09-2194.

3

When Lujan returned to the patrol car, he left his front passenger door open. As Lujan waited by the patrol car, Ruiloba opened the front driver's side door to check Lujan's VIN number. He also ran a warrants check. After Ruiloba confirmed that Lujan was not driving a stolen car and that there were no outstanding warrants for his arrest, Ruiloba issued Lujan a speeding ticket and a warning for failure to carry his registration. Ruiloba also returned Lujan's driver's license and insurance verification. Lujan signed his citation and began walking back to the driver's side of his car, despite the fact that the front passenger door remained open.

When Lujan reached the front driver's side of his vehicle, Ruiloba called out to him: "Mr. Lujan, there is [sic] a couple more questions I have. Could you come talk to me?" Id. at 89. Although there is no indication that Lujan verbally consented to this request, Lujan walked back to Ruiloba's patrol car. Ruiloba then asked Lujan, in separate questions, if he had any weapons, marijuana, heroin, methamphetamine, or cocaine in the vehicle. According to Ruiloba, Lujan answered "no" to each question, but he laughed after denying that he had any cocaine in his vehicle.

Ruiloba then asked Lujan if he could search his car. Lujan said he could not. Ruiloba then asked Lujan if he was responsible for everything in his vehicle. Lujan stated that he was. When Ruiloba again asked Lujan if he could search his vehicle, Lujan replied: "No, I don't know why you would want to search my

4

vehicle." Id. at 92. Ruiloba then told Lujan that he had a narcotics detection dog, and asked for permission to "r[u]n the dog around [his] car." Id. Lujan responded, "[o]kay." Id.

Ruiloba then placed Doobie, the drug detection dog, on a leash and led him to the front driver's side of Lujan's vehicle. Ruiloba and Doobie proceeded in a counter-clockwise direction around Lujan's car until they reached the front passenger side. At that point, without encouragement or command from Ruiloba, Doobie jumped into the passenger area, then into the back seat, and then into the open area of the car where he began "alerting" to something on the floor of the car. Id. at 141.

Ruiloba subsequently initiated his own search of Lujan's vehicle and discovered two bundles of what turned out to be cocaine in a white plastic bag underneath the front passenger seat. Ruiloba then arrested Lujan and transferred him to the custody of the FBI. While in FBI custody, Lujan made a number of incriminating statements.

*Procedural History*

In November 2008, a grand jury indicted Lujan on two counts of possession of 100 or more grams of heroin with intent to distribute[2] and one count of possession of 500 or more grams of cocaine with intent to distribute. Before trial,

_____

[2] Detective Ruiloba did not find heroin in Lujan's car during the search in question. The heroin charges stem from separate, prior incidents in which Lujan apparently sold heroin to an undercover officer.

5

Lujan moved to suppress the cocaine seized during Detective Ruiloba's traffic stop and the statements he made following his arrest. After conducting a hearing on this matter, the district court denied both of Lujan's suppression motions from the bench. The district court later entered a written order memorializing its rulings.

Following trial, the jury returned guilty verdicts on the charge of possession of cocaine with intent to distribute and on one of the two charges of possession of heroin with intent to distribute. The jury did not reach a verdict on the remaining charge of possession of heroin with intent to distribute. The district court declared a mistrial on this count and the government subsequently dismissed the charge.

After receipt and review of the pre-sentence report, the district court sentenced Lujan on each count to a concurrent 151-month term of imprisonment to be followed by a concurrent 8-year term of supervised release. The district court also revoked Lujan's supervised release from a prior federal conviction and sentenced him to a concurrent 24-month term of imprisonment. Lujan subsequently filed two separate notices of appeal: one challenging the district court's denial of his motion to suppress physical evidence (Case No. 09-2194), and one challenging the district court's revocation of his supervised release (Case No. 09-2193). Although we granted Lujan's motion to consolidate his two appeals, he now only argues that the district court erred in denying his motion to

suppress, which pertains solely to his conviction for possession of cocaine with intent to distribute.

## II

### *Standard of Review*

In reviewing a district court's denial of a motion to suppress, "we review legal conclusions de novo and findings of fact for clear error." United States v. Smith, 606 F.3d 1270, 1275 (10th Cir. 2010). We also construe "the evidence in the light most favorable to the government." Id.

### *Analysis*

Lujan asks this court to reverse the district court's denial of his motion to suppress because Doobie's entry into his car violated his Fourth Amendment rights. In addressing this assertion, we note that while "[a] dog sniff of the exterior of a vehicle parked in a public place . . . is not a Fourth Amendment intrusion," a drug dog's entry into a vehicle prior to the establishment of probable cause may raise Fourth Amendment concerns because "[p]eople have a reasonable expectation of privacy in the interior of their automobiles." United States v. Engles, 481 F.3d 1243, 1245 (10th Cir. 2007); United States v. Stone, 866 F.2d 359, 363 (10th Cir. 1989).

In analyzing whether Doobie's entry into the interior of Lujan's car was an unreasonable search under the Fourth Amendment, we first note our decision in United States v. Stone, which also involved a drug dog's entry into a vehicle. In

Stone, a police officer stopped a vehicle driven by John Stone, who had been under investigation for possession of narcotics. 866 F.2d at 360–61. When the officer informed Stone that he had been speeding, Stone stated that a different officer had already issued him a speeding ticket earlier that day. Id. at 361. The officer asked if he could see the citation and Stone stated that the ticket was in the back of his car. Id. With the officer's permission, Stone got out of his car, opened the hatchback, and retrieved the ticket. Id. A few minutes later, another police officer arrived with a drug dog. The drug dog began sniffing the exterior of Stone's vehicle. Id. After sniffing around the side and rear of the car, the dog "jumped in the open hatchback" and "keyed on a duffel bag." Id. (internal quotation marks omitted). The police officers then searched the entire car and found large amounts of narcotics. Id.

At trial, Stone moved to suppress the narcotics found in his car, claiming that his Fourth Amendment rights were violated when the drug dog jumped into his car. Id. After reviewing this issue on appeal, we held that the dog's spontaneous leap into the open hatchback of the car was not improper because "[a] dog's instinctive actions d[o] not violate the Fourth Amendment." Id. at 364. We also held that the search was valid because the officers did not facilitate the dog's leap into the car. Id.; see also United States v. Winnigham, 140 F.3d 1328, 1331 (10th Cir. 1998) (holding that the officers in Stone acted properly because they did not act with "[a] desire to *facilitate* a dog sniff" of the car in question)

8

(emphasis in original). As support for this conclusion, we noted there was no evidence that the officers asked Stone to open the hatchback or insist that he leave it open. Stone, 866 F.2d at 364. Further, Stone admitted that the officers did not encourage the dog to jump into his car. Id. Thus, we concluded that the officers "remained within the range of activities they may permissibly engage in when they have reasonable suspicion to believe an automobile contains [contraband]." Id.

Lujan argues Stone is factually distinguishable from this case in two regards. First, Lujan points out that Ruiloba was aware that, on at least one prior occasion, Doobie had "climbed into a car without direction." ROA Vol. 3, at 135. According to Lujan, because Ruiloba was aware of this fact, he was on notice that Doobie had the potential to spontaneously jump into a car and therefore Ruiloba should have acted to prevent Doobie from jumping into Lujan's car.

We are unpersuaded by this argument because the central issue in Stone was not whether the drug dog had previously jumped into a car undirected, but whether the officers improperly facilitated the dog's entry into Stone's car. In fact, in Stone we never addressed whether the dog in question had a history of entering into a car spontaneously and in the absence of any officer direction. We did not address this question because our holding that "[a] dog's instinctive actions d[o] not violate the Fourth Amendment," Stone, 866 F.2d at 364, foreclosed the need for further inquiry into the dog's prior history. We read

9

Stone to hold that a dog's instinctive leap into a car is not a Fourth Amendment violation unless an officer improperly facilitates the dog's entry into the vehicle. Id.

Second, Lujan argues this case is distinguishable because unlike the dog in Stone who "found drugs immediately upon jumping into the car," "Doobie sniffed around, both in the back seat and the front, before he ultimately located drugs." Aplt. Op. Br. at 27. According to Lujan, Ruiloba had both the opportunity and obligation to call Doobie out of the car, but nonetheless "chose to let Doobie continue [his] search[]." Id.

We are unpersuaded by Lujan's argument because the record does not clearly indicate how long Doobie was in the car. Id. Ruiloba testified at the pre-trial suppression hearing that Doobie first "jumped into passenger area, [then] into the back seat, and then came back out towards the open area, and . . . alert[ed] to the floor board. ROA Vol. 3, at 141. After hearing this testimony, as well as Lujan's testimony,[3] the district court found that "Doobie entered the automobile and alerted at the passenger seat of the vehicle." Id. at 229.

Reviewing the district court's findings of fact for clear error, and construing the facts in the light most favorable to the government, we conclude the court did not clearly err in denying the motion to suppress. Ruiloba testified

---

[3] The district court specifically disregarded Lujan's testimony, finding that he had "not been credible." ROA Vol. 3, at 227.

10

that Doobie moved from the front passenger seat, to the back seat, to the open area near the passenger seat, but there is no clear indication regarding how long Doobie was in the car. The district court did not find that Doobie was inside the car for a substantial period of time, but rather, after hearing Ruiloba's testimony, the court simply found that Doobie "entered the automobile and alerted at the passenger seat of the vehicle." Id. Reviewing the facts in the light most favorable to the government, we conclude that the district court's finding on this matter was reasonably based on the evidence and therefore not clearly erroneous.

Because we are unpersuaded by Lujan's attempts to distinguish this case from Stone, the only remaining issue is whether Detective Ruiloba improperly facilitated Doobie's entrance into the car. On this point, Stone is directly applicable. Like the officers in Stone, Ruiloba did nothing to facilitate Doobie's entry into the car—he neither opened the passenger door, asked Lujan to leave the door open, nor encouraged Doobie to jump inside. See, 866 F.2d at 364. Thus, as with the dog in Stone, Doobie's leap into Lujan's car was the result of his "instinctive actions" and not the result of Ruiloba facilitating his entry into the vehicle. Id. Because Doobie's entry into Lujan's car was not improper, we conclude that Ruiloba had probable cause to search the vehicle after Doobie alerted to the presence of narcotics. See id. Accordingly, the district court did not err in denying Lujan's motion to suppress physical evidence.

11

## III

The judgment of the district court (Case No. 09-2194) is AFFIRMED.

As Lujan has not challenged the revocation of his supervised release (Case No. 09-2193), the revocation of his supervised release is also AFFIRMED.


Entered for the Court


Mary Beck Briscoe
Chief Judge