# IN THE COURT OF APPEALS OF IOWA

No. 15-1736
Filed November 9, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JONATHON D. GEORGE,**
        Defendant-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Joel A. Dalrymple (suppression hearing) and David F. Staudt (sentencing), Judges.

Jonathon George appeals the judgment and sentences imposed following his convictions for possession of a firearm as a felon, third-offense possession of methamphetamine, and third-offense possession of marijuana. **CONVICTIONS AFFIRMED, SENTENCES VACATED IN PART, AND REMANDED FOR RESENTENCING.**

Nina Forcier of Forcier Law Office, PLLC, Waterloo, for appellant.

Thomas J. Miller, Attorney General, and Jean C. Pettinger, Assistant Attorney General, for appellee.

Heard by Danilson, C.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

Jonathon George was stopped for driving erratically. During a drug sniff of the vehicle, K-9 Sali suddenly jumped through the open driver's window and alerted on drugs located in the rear-passenger-seat area. George was charged with, and later found guilty of, possession of a firearm as a felon, third-offense possession of methamphetamine, and third-offense possession of marijuana.

George appeals his convictions, contending the trial court erred in overruling his motion to suppress evidence discovered during the search of his vehicle. He argues the length of his detention and the search of the vehicle were unreasonable. He also challenges his sentences, arguing the sentencing court failed to state on the record its reasons for imposing consecutive sentences. Because the stop and search of George's vehicle was constitutionally permissible, we affirm the denial of his motion to suppress. However, because the sentencing court failed to give adequate reasons for imposing consecutive sentences, we vacate that portion of the sentencing order and remand for resentencing.

### I. Background Facts and Proceedings.

On the night of August 28, 2014, the Evansdale Police Department received several phone calls concerning an SUV that was traveling "all over the roadway" on Interstate Highway 380, including a report that the SUV "went into the ditch and drove back onto [the road]." Dispatch advised law enforcement officers the vehicle continued west on Highway 20. Responding officers located the vehicle in question and observed it drifting from the right shoulder of the

divided four-lane highway to the median shoulder, and back again. Because the vehicle posed a safety risk, a traffic stop was initiated.

George was the driver of the SUV, and he appeared sleepy and lethargic to the officers. He told the officers he was traveling from Oelwein to Ames and was tired from driving alone. His pupils were very constricted and did not react to changes in light—a sign of narcotics use. George stated he was not nervous about the stop and denied he had consumed any alcohol. Because of his erratic driving, his constricted pupils, and his sluggish appearance, the officers suspected George was under the influence of alcohol or narcotics, and they requested a K-9 officer assist with the stop. George consented to submit to field sobriety tests. He passed two field sobriety tests but was unable to complete the third. He then submitted to a preliminary breath test, which registered a blood alcohol content of .000.

One of the officers requested George's consent to search the vehicle and observed that George became "nervous and fidgety." George claimed he did not have authority to consent to a search because someone else owned the vehicle, though he claimed he was operating it with the owner's knowledge and consent. George provided the owner's name but not his phone number, stating he was concerned the owner would be upset with him if he provided it. The officers contacted the Oelwein Police Department to locate the owner to verify George had permission to drive the vehicle.

While waiting to learn if George had the owner's consent to operate the vehicle, Officer Michael Dean, the K-9 officer, arrived at the scene with Sali, a German Shephard trained in narcotics detection. As Officer Dean was walking

Sali around the vehicle, Sali jumped into the SUV through the open driver's window and began "bracketing type behavior" to locate the source of an odor. She stuck her snout into a suitcase and bags lying in the rear passenger area of the vehicle, indicating the source of a narcotic odor.

After Sali indicated the presence of narcotics inside the SUV, the officers detained George in the backseat of a patrol vehicle while they conducted a search of the vehicle's backseat area and the luggage stowed in it. They discovered a firearm with ammunition and small plastic bags containing marijuana and methamphetamine. Two plastic bags of methamphetamine were located in a pill bottle with George's name printed on the label, and other pill bottles were found containing various prescription drugs. The officers also found drug paraphernalia, men's clothing similar in style and size to the clothing George was wearing, an insurance card for an individual who listed the same address as George, and an order form with George's name and address printed on it. Some of the items were located in the suitcase that Sali had indicated was a source of a narcotic odor.

The State charged George with possession of a firearm as a felon, possession of methamphetamine, possession of marijuana, and possession of a prescription drug. The drug charges each carried an enhancement as a third offense.

George moved to suppress the items discovered during the search of the vehicle, alleging the search violated his right to be free from unreasonable searches under the Federal and Iowa Constitutions. He argued the dog never alerted the K-9 officer it detected the presence of a narcotic before entering the

vehicle and that the dog was not reliable or well trained. He also argued the search exceeded the scope of the "open air sniff" when the dog entered the vehicle. The district court denied the motion following a hearing.

George waived his right to a jury trial and requested a bench trial on the minutes of evidence. The district court found George guilty of possession of a firearm as a felon, possession of methamphetamine, and possession of marijuana.[1] It sentenced George to a five-year prison term on each count, ordered the sentences to run consecutively for a total prison term of fifteen years, and suspended the sentences. George now appeals, challenging the court's ruling on his motion to suppress and his sentence.

**II. Search and Seizure Claims.**

We review a claim the trial court erred in denying a motion to suppress on federal and state constitutional grounds de novo. *See State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011). In doing so, we make "an independent evaluation of the totality of the circumstances as shown by the entire record." *Id.* (quoting *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001)). Because the district court had the opportunity to evaluate the credibility of the witnesses, we give deference to its fact findings but are not bound by them. *See id.*

George alleges both his detention and the search of the vehicle violated his right to be free from an unreasonable search and seizure. Specifically, he argues the officers lacked individualized suspicion of criminal activity to continue the traffic stop beyond his initial detention. He also argues the search of his vehicle was unreasonable because the officers lacked probable cause.

---

[1] The State dismissed the charge of possession of a prescription drug.

**A. George's detention.**

We first address George's claim that his detention beyond the initial traffic stop was unreasonable. George concedes the officers had a reasonable basis for stopping his vehicle based on the reports of his erratic driving, which raised a reasonable suspicion that he was driving while under the influence of alcohol or drugs. George instead argues his continued detention was unreasonable.

After initiating a traffic stop, law enforcement officers may undertake investigation that is "reasonably related in scope to the circumstances which justified the interference in the first place." *State v. Bergmann*, 633 N.W.2d 328, 335 (Iowa 2001) (citation omitted). That includes asking to see a driver's license and registration, and requesting that a driver sit in the patrol car. *See id.* If in the course of undertaking that investigation, the driver's answers or actions raise suspicions unrelated to the traffic offense, the officer may broaden the scope of inquiry to address those suspicions. *See id.* However, a traffic stop may not last "longer than is necessary to effectuate [its] purpose." *In re Pardee*, 872 N.W.2d 384, 392 (Iowa 2015) (citations omitted). Once the "tasks tied to the traffic infraction are—or reasonably should have been—completed," the officer's authority for the seizure ends. *Id.* (quoting *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015)). An officer may not unduly prolong an individual's detention without additional suspicion of wrongdoing. *See Bergmann*, 633 N.W.2d at 335.

George claims the purpose of the traffic stop was satisfied and he should have been allowed to go once he passed two of the three field sobriety tests and registered a blood alcohol content of .000 on the preliminary breath test, the officers learned the vehicle's owner had given George permission to drive the

vehicle, and the officers checked for outstanding warrants and verified the validity of George's driver's license. He argues that after that point, the officers lacked individualized reasonable suspicion of wrongdoing to continue the detention.

George argues he was detained an additional amount of time to allow Officer Dean to arrive and conduct an investigation with Sali. The record indicates otherwise, but in any event, the officers had reasonable suspicion to believe George was driving under the influence of a narcotic, which justified his continued detention. Although the field sobriety tests and preliminary breath test result may have dispelled suspicion that George was operating the vehicle under the influence of alcohol, the question of whether he was under the influence of narcotics still remained in light of his erratic driving, his constricted pupils and their failure to react to light, and his tired and lethargic appearance. The officers had specific, articulable facts on which to continue their investigation. Therefore, George's detention was not unreasonable.

**B. Search of the vehicle.**

George next argues the search of the vehicle violated his constitutional right to be free from unreasonable searches and seizures. Specifically, he contends: "The dog did not alert until it entered [his] vehicle. This is not an open air sniff and invades a person's right to privacy by breaking the plane of the car and entering under Article I section 8 of the Iowa Constitution."

> Searches and seizures are unconstitutional if they are unreasonable and reasonableness depends on the facts of the particular case. Warrantless searches are per se unreasonable if they do not fall within one of the well-recognized exceptions to the warrant requirement. Those exceptions include: (1) consent search; (2) search based on probable cause and exigent circumstances; (3) search of items in plain view; or (4) search

> incident to a lawful arrest. The State must prove by a preponderance of the evidence that a warrantless search falls within one of the exceptions.

*State v. Naujoks*, 637 N.W.2d 101, 107-08 (Iowa 2001) (citations omitted). In denying George's motion to suppress, the trial court found the search was permissible because the officers had probable cause to believe narcotics were inside the vehicle.

The detection of an odor of a controlled substance emanating from an automobile provides probable cause to conduct a comprehensive search of the vehicle, regardless of whether the detection is made by an officer or a canine trained to detect narcotics. *Compare State v. Eubanks*, 355 N.W.2d 57, 59 (Iowa 1984) ("The odor of that controlled substance in the automobile gave the patrolman reasonable cause to conduct a comprehensive search of the car."), *with Bergmann*, 633 N.W.2d at 338 ("Because the drug dog alert established probable cause, the police legally searched the car without a warrant under the probable cause plus exigent circumstances exception to the warrant requirement."). Precedent clearly establishes that a "dog sniff" does not constitute a search when it occurs outside a vehicle. *See United States v. Place*, 462 U.S. 696, 707 (1983); *Bergmann*, 633 N.W.2d at 334. George claims the dog's sniff cannot constitute probable cause because the dog did not alert to or indicate the presence of the narcotic odor before jumping into the SUV.

Sali is not the first drug detection dog to have instinctively jumped into a vehicle without direction by its handler. In 1989, the Tenth Circuit Court of Appeals in *United States v. Stone* was faced with substantially the same circumstances we face here. 866 F.2d 359, 361 (10th Cir. 1989). In that case, a

drug-detection dog was performing a sniff outside a vehicle when he jumped through the open rear hatch "where he 'keyed' on a duffel bag." *Id.* The bag was searched and drugs were discovered. *See id.* Asserting the search of his car violated his Fourth Amendment rights, Stone moved to suppress the drugs. *See id.* The motion was denied. *See id.* On appeal, the Tenth Circuit affirmed, ruling the dog's instinctive actions did not violate the Fourth Amendment because there was "no evidence . . . that police asked Stone to open the hatchback so the dog could jump in. Nor [was] there any evidence the police handler encouraged the dog to jump in the car." *Id.* at 364.

Since *Stone*, other federal circuit courts of appeal have also held that absent police misconduct, the instinctive actions of a trained canine do not violate the Fourth Amendment. *See United States v. Guidry*, 817 F.3d 997, 1006 (7th Cir. 2016) (finding no Fourth Amendment violation where there was no indication that the officers intended to facilitate the dog putting its head through the open door); *United States v. Sharp*, 689 F.3d 616, 620 (6th Cir. 2012) (holding a dog's instinctive jump through open window without encouragement or facilitation by the dog's handler did not violate the Fourth Amendment), *cert. denied*, 133 S. Ct. 777 (2012); *United States v. Mostowicz*, 471 F. App'x 887, 891 (11th Cir. 2012) (finding dog's act of jumping instinctively into the car without encouragement or facilitation from officers did not violate the Fourth Amendment); *United States v. Pierce*, 622 F.3d 209, 214-15 (3d Cir. 2010) (finding the defendant's Fourth Amendment rights were not violated when the dog instinctively jumped through the vehicle's open door without facilitation by his handler); *United States v. Lyons*, 486 F.3d 367, 373 (8th Cir. 2007) (holding

search permissible where, without direction from his handler, drug dog stuck its head through van's open passenger window and indicated source of drugs). Numerous federal district courts have reached similar results. *See United States v. Johnson*, ELH-15-0542, 2016 WL 4592377, at *22 (D. Md. Sept. 2, 2016) (listing cases); *accord United States v. Pulido-Ayala*, No. 15-00359-01-CR-W-DGK, 2016 WL 3828500, at *2 (W.D. Mo. July 13, 2016); *United States v. Azpeitia*, No. 2:12CR00289 DS, 2013 WL 840053, at *3 (D. Utah Mar. 6, 2013); *United States v. Irvin*, No. 07-20557, 2012 WL 5817903, at *6 (E.D. Mich. Sept. 20, 2012); *United States v. Nance*, No. 3:09-CR-163, 2010 WL 4004782, at *21 (E.D. Tenn. Sept. 17, 2010); *United States v. Williams*, 690 F. Supp. 2d 829, 835 (D. Minn. 2010); *United States v. Pierce*, No. 08-126-JJF, 2009 WL 255627, at *6 (D. Del. Feb. 2, 2009). Likewise, many state appellate courts have also followed suit. *See Omar v. State*, 262 S.W.3d 195, 202 (Ark. Ct. App. 2007); *People v. Stillwell*, 129 Cal. Rptr. 3d 233, 240-41 (Cal. Ct. App. 2011); *State v. Naranjo*, 359 P.3d 1055, 1057-58 (Idaho Ct. App. 2015); *Cruz v. State*, 895 A.2d 1076, 1087 (Md. Ct. Spec. App. 2006); *State v. Cadavid*, No. 08-08-1452, 2015 WL 2212200, at *5 (N.J. Super. Ct. App. Div. May 13, 2015); *State v. Miller*, 766 S.E.2d 289, 296 (N.C. 2014). Naturally there are some factual differences between each case and the one at hand; nevertheless, we find these cases to be persuasive.

After a comprehensive analysis of the issue, the Supreme Court of North Carolina aptly summed up:

> If a police dog is acting without assistance, facilitation, or other intentional action by its handler (in the words of *Sharp*, [689 F.3d at 618-20,] acting "instinctively"), it cannot be said that a State

or governmental actor intends to do anything. In such a case, the dog is simply being a dog. If, however, police misconduct is present, or if the dog is acting at the direction or guidance of its handler, then it can be readily inferred from the dog's action that there is an intent to find something or to obtain information. *See* [*United States v.*] *Winningham*, 140 F.3d [1328,] 1330-31 [(10th Cir. 1998)] (invalidating a search on such grounds). In short, we hold that a police dog's instinctive action, unguided and undirected by the police, that brings evidence not otherwise in plain view into plain view is not a search within the meaning of the Fourth Amendment . . . .

*Miller*, 766 S.E.2d at 296. We agree and hold that absent police misconduct, the instinctive actions of a trained canine do not violate the Fourth Amendment or article I, section 8 of the Iowa Constitution.

Although there is some dispute as to whether or not Sali alerted to the presence of the odor of a drug before she jumped through the driver's window, it does not play an integral role in our analysis. On this point, our sister court in Idaho concluded:

We do not believe a drug dog's behavior before entering a vehicle is constitutionally significant. While the dogs in many (but not all) of the cases above exhibited some indication they had detected an odor before entering the vehicle, none of the cases based their holding on this fact. Rather, the cases focused on whether the dogs' acts were instinctual and whether police facilitated or encouraged the acts. *Sharp*, 689 F.3d at 620; *Pierce*, 622 F.3d at 214-15; *Lyons*, 486 F.3d at 373-74; *Stone*, 866 F.2d at 364; [*United States v.*] *Hutchinson*, 471 F. Supp. 2d [497,] 510-11 [(M.D. Pa. 2007)]; *cf. Winningham*, 140 F.3d at 1331. Further, a dog may follow a scent to its source without any indication it has detected an odor before entering a vehicle. *Hutchinson*, 471 F. Supp. 2d at 506 n.8 (presuming dog entered car "due to the smell of the narcotics" because the dog indicated immediately after entry and the canine officer testified the dog "'followed the odor of narcotics' into the car," but "offered no testimony as to how he knew what drew [the dog] into the car").

*Naranjo*, 359 P.3d at 1057-58 (footnote omitted). We agree, and for all the above reasons, we hold that Sali's instinctive jump into George's SUV did not

violate his federal or state constitutional rights to be free from unreasonable searches.

George also disputes the dog's qualifications to detect narcotic odors, arguing the dog was neither well-trained nor reliable. George notes that Sali's yearly certification lapsed in July 2014 and she was not recertified until December 2014. He also argues Sali "did not perform flawlessly in certification."

The record at the suppression hearing shows Officer Dean had been a K-9 officer for approximately four years. When the Evansdale Police Department first obtained Sali, Officer Dean attended a three-week training program with her. The pair was certified and recertified a year later. They were unable to complete their annual recertification in July 2014 due to Officer Dean's illness. Their recertification was delayed until December 2014, but they had no difficulties with their recertification. Over the course of his four years working with Sali, Officer Dean engaged in regular training with her, up to "a couple times a week." Although Sali did not perform "flawlessly" upon recertification, that is not the standard we apply.

> [E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert. If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search. *The same is true, even in the absence of formal certification, if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs.* After all, law enforcement units have their own strong incentive to use effective training and certification programs, because only accurate drug-detection dogs enable officers to locate contraband without incurring unnecessary risks or wasting limited time and resources.

*Florida v. Harris*, 133 S. Ct. 1050, 1057 (2013) (emphasis added).

Sali may not have been an honor student, and her certification was lapsed at the time of the sniff, however, nothing in the record indicates Sali was unreliable or not well-trained. Sali was qualified to detect narcotic odors. Accordingly, her sniff was up to snuff. *Id.* at 1058.

**III. Consecutive Sentences.**

George also appeals his sentences, arguing the court failed to state on the record its reasons for ordering them to run consecutively. "We review the district court's sentence for an abuse of discretion," which is found when the court exercises its discretion on clearly untenable grounds or to an extent clearly unreasonable. *State v. Hill*, 878 N.W.2d 269, 272 (Iowa 2016). A ground or reason is untenable when not supported by substantial evidence or based on an error of law. *See id.*

The sentencing court must sufficiently state on the record its reasons for selecting a particular sentence in order to allow us to review the exercise of its discretion. *See id.* at 273. That includes the reasons for imposition of consecutive sentences. *See id.* The court's reasoning need not be detailed; a terse statement may be sufficient if it does not prevent our review. *See State v. Thacker*, 862 N.W.2d 402, 408 (Iowa 2015). However, the sentencing court should explicitly state its reasons for imposing consecutive sentences. *See Hill*, 878 N.W.2d at 275. Although the court's reasons for imposing consecutive sentences may be the same as its reasons for imposing incarceration, we may not infer the same reasons apply as part of an overall sentencing plan. *See id.* (overruling *State v. Hennings*, 791 N.W.2d 828, 838-39 (Iowa 2010), and *State v. Johnson*, 445 N.W.2d 337, 343-44 (Iowa 1989)).

In sentencing George, the court stated:

Well, I've reviewed the presentence investigation report and the facts and circumstances of the case. Although [the prosecutor] makes a good argument that you should go to prison, I'm [not going to send] you to prison at this time; however, . . . given your past history and the fact that you have a lengthy substance-abuse problem, also you've got two prior felonies which makes you a felon in possession of a firearm . . . . What I'm going to do on Count I, the Felon in Possession, and Count II and Count III, you'll receive a five-year prison term. That prison term will be suspended based upon good behavior on probation. There will be a $750 fine along with a thirty-five percent surcharge, [and] court costs. . . .

. . . .

. . . [T]here will not be attorney fees. . . . On Counts II and III there will be a $125 law enforcement initiative fee, $10 DARE fee, 180-day driver's license suspension, and you'll be ordered to obtain a substance evaluation and comply with the recommendations. We don't know what those will be but you'll need to comply with those. What I am going to do is I'm going to run each of these consecutive for fifteen years total. So you're going to be on probation but you're going to have a fifteen-year prison term hanging over your head. . . .

. . . .

So you're not going to prison, you're going to get two-to-five years of supervised probation; you're going to be on the Corrections Continuum, meaning if you violate this in certain ways, they can put you in the residential facility, but also they can ask that your probation be revoked. If your probation gets revoked, you're going to be in prison for fifteen years. So it's time that you address this substance abuse problem, get a little more hands-on approach, go get an evaluation and, you know, kudos to you if you've actually been sober since this occurred. Certainly that's a good thing. But, you know, you're working, you're doing the right things . . . .

You're probably going to end up doing some NA or AA or something, and I think you need to get some other kind of structure involved here so that you can stay out of prison. . . .

. . . .

. . . So whatever the reason was for driving all over the road, you're pretty lucky you didn't get in an accident and potentially kill yourself or others. Certainly before you borrow somebody's car, you're going to want to find out if there's a gun in it from now on. Doesn't make it any better; you're not supposed to be around one. So to that extent you found out the severity of that.

Because the court failed to give sufficient reasons for imposing consecutive sentences to allow our review of its discretionary action, we vacate the portion of the order imposing consecutive sentences. On remand, the trial court should determine whether the sentences should run consecutive or concurrent and provide reasons for its decision. *See State v. Jason*, 779 N.W.2d 66, 77 (Iowa Ct. App. 2009) ("Here, the trial court provided no explanation for the imposition of consecutive sentences during the sentencing hearing or in the sentencing order. Since the trial court gave sufficient reasons for imposing incarceration, we vacate only that portion of the sentence imposing consecutive sentences and remand for the purpose of determining whether the sentences should run consecutive or concurrent."). We affirm in all other respects.

**CONVICTIONS AFFIRMED, SENTENCES VACATED IN PART, AND REMANDED FOR RESENTENCING.**