**UNITED STATES of America, Appellee,**

v.

**Michael Anthony LYONS, Appellant.**

No. 91–2495.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1991.

Decided Feb. 27, 1992.

James M. Grochal, Minneapolis, Minn., argued, for appellant.

Jeanne J. Graham, Minneapolis, Minn., argued, for appellee.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and KAUFMAN,* District Judge.

JOHN R. GIBSON, Circuit Judge.

Michael Anthony Lyons appeals from his conviction for possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1988). Lyons argues that the district court[1] erred in refusing to suppress evidence of contraband the government discovered when a trained narcotics dog tore open a package addressed to Lyons. We affirm the district court's judgment.

On October 14, 1990, an employee of Northwest Airlines at the Minneapolis airport called police to investigate what she considered to be a suspicious package held by Northwest's Very Important Package

---

* The HONORABLE FRANK A. KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

1. The Honorable James M. Rosenbaum, District Judge for the District of Minnesota.

service—an airport-to-airport guaranteed arrival delivery service. The Northwest employee considered the package suspicious because it was a lightweight brown envelope, with contents that "crunched" when she picked it up. She noted that the package had been sent from New York and that the sender had paid the transportation charges in cash, which is a common form of payment in the drug trade. The employee also noticed that the contents were not listed on the airbill, as they usually are. Northwest had put the package in a box to protect it during the handling process, and the employee took the package out of the box. When the police arrived, they recognized the sender's name on the airbill, Carl Banks, as a person who had been involved in an earlier cocaine investigation. The airbill also had a driver's license number on it that police traced and found belonged to Girard Russell, another name police recognized as someone involved in an earlier cocaine investigation. Police noted the sender had paid $52.50 in transport charges to send the package, which seemed to contain a small amount of some unidentified substance. Finally, the package was directed to the same address police had listed for Carl Banks.

Based on this information, the police took Grady, a trained narcotics detection dog, to the Northwest freight room. They placed the envelope addressed to Lyons in the midst of fifteen to twenty other packages and brought the dog into the room. He sniffed the other packages, but when he got to the Lyons package he became agitated and tore the package in two, spewing the contents on the floor. The contents were white chunks which the police then field tested and determined to be cocaine. Grady had to be treated with drugs to counteract the effect of any cocaine he may have eaten. The police then put the cocaine back into the package. When Lyons called for the package and left with it, police arrested him on the way out to his car. They searched Lyons during his arrest and conducted an inventory search of his car. They then obtained a warrant based in part on the discovery of the cocaine in the package and searched Lyons' house.

Lyons moved to suppress the evidence of the Northwest package, and the items discovered in searching him and his house. The magistrate judge initially hearing the matter reported that the dog tore open the package "without prompting from its handler," and the district court adopted this finding. The challenged evidence was admitted at trial and Lyons was convicted.

Lyons argues that the police used the dog to evade the warrant requirement and that therefore the dog's actions must be considered a search.

To begin our analysis, we observe that the events leading up to the actual tearing of the package present reasonable grounds for suspicion that the package contained drugs. Had the dog merely sniffed a package in the custody of a third-party common carrier and alerted the police to the presence of drugs without exposing the contents of the package, the sniff test would have clearly been permissible under our recent case of *United States v. Riley*, 927 F.2d 1045, 1047–48 (8th Cir.1991).

The question before us is whether the dog's action in tearing the package open constitutes a "search." The magistrate and district court found that the dog tore the package without prompting, and the evidence supports this finding. There was testimony that tearing a package would be a normal part of Grady's response to the presence of drugs, but the police testified that in this case the entire event happened in seconds, so quickly that police had no chance to stop Grady from tearing the package.

Lyons argues that the police made it inevitable that the dog would tear the package by not putting the package in the box Northwest had used to transport it from New York before exposing it to the dog. This supposed omission does not give rise to an inference of police misconduct. It was Northwest, not the police, after all, who took the package out of the box. The sniff test was conducted on the package *as it was delivered to Northwest* for shipment, and as it was delivered to the police for investigation. Thus, no evidence in the record supports an inference of police misconduct.

Without misconduct by the police, the mere fact that the dog tore the package does not constitute a "search." As in *United States v. Stone*, 866 F.2d 359 (10th Cir.1989), "the dog's instinctive actions" did not violate the fourth amendment. *Id.* at 364.

Moreover, Lyons' counsel conceded at oral argument that had the dog merely alerted to the package without exposing the contents, there would certainly have been probable cause to obtain a warrant to search the package. Given the certainty that the course of action the police were pursuing at the time of the alleged "search" would have led to discovery of the same evidence forthwith by unquestionably legal means, there is no reason to penalize the police for this accident by excluding evidence. *Cf. Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Lyons relies on the pre-*Nix* case of *United States v. Griffin*, 502 F.2d 959 (6th Cir.), *cert. denied*, 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1974), to argue that the government cannot rely on the fact that the discovery was inevitable. We are not persuaded because, among other things, the officers in this case never intentionally undertook a warrantless "search," as the officers did in *Griffin*.

We affirm the judgment of the district court.