DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant, Nial Voss Napier, appeals from his conviction in the Medina County Court of Common Pleas for two counts of drug trafficking. We affirm.
Defendant and two co-defendants were charged with two counts of trafficking in drugs after the police found the following items in Defendant's car: $75,000 cash, a loaded semi-automatic handgun, a brick of marijuana wrapped in cellophane, a small digital scale, and 20,000 unit doses of LSD. The police discovered the drugs and the contraband when Defendant's car was stopped by Ohio Highway Patrol officers who were patrolling Interstate 271 and 71 for speeders over the Memorial Day Weekend.
On May 26, 1996, the three co-defendants were traveling from New York to Arizona. A motorist had called to report that Defendant's car was swerving all over the road. A patrol plane located the automobile and watched as it swerved from the left lane, completely across the right lane onto the berm and onto the grass on the right side of the highway. The automobile then came back into the right lane and continued southbound. Two patrol cars arrived at the scene, and the patrolmen conducted the traffic stop. Sergeant Bittner approached the car and talked to the driver. Trooper Farabaugh approached the passenger side of the vehicle. The officers noticed that there was a temporary New York license plate taped to the rear window of the car and that the interior was cluttered with debris from fast food restaurants, coffee cups, and other items that gave the appearance that the three occupants had been riding in the car for some time.
The car's driver, David Carpenter, explained the weaving by saying that he was tired from driving all day. Mr. Carpenter passed the field sobriety test, but a computer check of his Arizona driver's license indicated that it was suspended. Sergeant Bittner had Mr. Carpenter sit in the back seat of his patrol car while he wrote a citation for failing to drive within the marked lanes. While Sergeant Bittner cited Mr. Carpenter, Trooper Farabaugh spoke with Defendant and the other passenger. The trooper noted that the two were very quiet and answered his questions abruptly. During that conversation, Defendant claimed that the car was owned by Mr. Carpenter.
Trooper Farabaugh joined Sergeant Bittner and Mr. Carpenter in the patrol car as the sergeant completed issuing the citation. The officers noted that Mr. Carpenter's demeanor changed notably when they asked him if the car that he had been driving contained any large sums of money, drugs, or weapons. When they asked if he would mind if the officers searched the car, Mr. Carpenter responded that it was not his car, but that it belonged to Defendant.
Trooper Farabaugh is a member of the Highway Patrol's drug interdiction unit, and he had a drug-sniffing dog, Amoros, in his patrol car. Based upon the conflicting statements regarding ownership of the car, along with several other indicators of possible drug trafficking that had been observed, Trooper Farabaugh decided to walk the dog around the car to see whether it would "alert," thereby indicating the presence of drugs. When the dog passed the open window by the driver's side, it exhibited a definite behavior change that was typical of its reaction when tracking a drug odor. The dog then jumped through the open car window onto the driver's seat and "alerted" on the ashtray. Further investigation revealed marijuana seeds and marijuana residue in and near the ashtray. Defendant and his companions claimed that they did not have a key to open the trunk, even though they had said that their clothes were there. A trunk release button inside the glove box would not open the trunk.
Believing that they had probable cause to search the trunk, the officers towed the vehicle to the patrol post where they could employ a locksmith to open the trunk. At the post, the officers conducted another search and discovered a small container of marijuana under the back seat. Defendant and his companions were placed under arrest. The drug dog was again taken around the car, this time with the windows closed, and Amoros alerted on the trunk area. The officers further inspected the trunk release button and discovered that the wiring had been disconnected. After reconnecting the wire, the release mechanism worked and the trunk opened.
The officers searched the trunk and found approximately $75,000 cash, most of which was wrapped in a sleeping bag, a loaded semi-automatic handgun, a brick of marijuana wrapped in cellophane, and a small digital scale. Because of the holiday weekend, rather than having the car immediately towed to a storage yard, the officers secured it in the post garage. Two days later, during an inventory search in preparation for turning the car over to a tow truck operator, a trooper discovered several sheets of paper soaked in LSD under the carpet in the trunk. The sheets contained approximately 20,000 doses of LSD. Defendant and his companions were indicted for a violation of R.C. 2925.03(A)(4) for the marijuana, and for a violation of R.C. 2925.03(A)(9) for the possession of more than one hundred times the bulk amount of LSD. Defendant moved to suppress the evidence found in the searches of the car. Following a two-day hearing, the trial court denied the motion and the three co-defendants proceeded to trial. The jury found Defendant and his co-defendants guilty as charged. Defendant was sentenced to eighteen months in prison for the marijuana charge, and to fifteen years to life on the LSD charge. Defendant appeals, raising three assignments of error.
 ASSIGNMENT OF ERROR I
In his first assignment of error, Defendant contends that the trial court erred in denying his motion to suppress evidence because: (A) Defendant believes that he should have been allowed to leave after the purpose of the initial traffic stop had been completed; (B) the canine sniff investigation went beyond the permissible scope of the exterior of the vehicle; and (C) the second search of the trunk was not for legitimate inventory purposes. This court has previously reviewed issues concerning the search of this vehicle when addressing the two co-defendants' similar complaints on appeal. We found that the evidence was not illegally obtained and that the trial court did not err in allowing it to be admitted. See State v. Carpenter (Apr. 8, 1998), Medina App. No. 2667-M, unreported; State v. Kelly (Mar. 25, 1998), Medina App. No. 2670-M, unreported.
 A.
A traffic stop is a seizure of the person under the Fourth Amendment. See Terry v. Ohio (1968), 392 U.S. 1, 20 L.Ed.2d 889. To justify a limited warrantless detention during a traffic stop, the detaining officer must possess a reasonable and articulable suspicion that a violation of law has or may have been committed. See id.
The ultimate questions of whether the police had a reasonable suspicion to make an investigatory stop, or probable cause to arrest, are to be reviewed by an appellate court de novo. SeeOrnelas v. United States (1996), 517 U.S. 690, 134 L.Ed.2d 911,919. Application of this standard requires review of the situation in light of the totality of the circumstances. Alabamav. White (1990), 496 U.S. 325, 328-29, 110 L.Ed.2d 301, 308; Statev. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus. We view the totality of the circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Andrews (1991), 57 Ohio St.3d 86,87-88.
Police officers are justified in briefly detaining individuals after a traffic stop in order to ask whether they might be carrying any illegal drugs or weapons. See State v.Robinette (1997), 80 Ohio St.3d 234, 241. If the officer then ascertains reasonably articulable facts giving rise to a suspicion of criminal activity, the officer is justified in further detaining the individual and implementing a more in-depth investigation. Id.
Defendant does not argue the validity of the initial traffic stop, but claims that he and his companions should have been free to go after the officer issued the citation for the traffic violation and told the driver that he was free to leave the patrol car concerning that matter. We disagree.
The Defendant's continued detention was based upon articulable facts giving rise to a suspicion of some separate illegal activity which warranted an extension of the detention to implement a more in-depth investigation and to conduct the dog sniff. See State v. French (1995), 104 Ohio App.3d 740, 747;State v. Gutierrez (July 17, 1996), Medina App. No. 2515-M, unreported. Trooper Farabaugh had observed that Mr. Kelly and Defendant were being very quiet and abruptly answering questions put to them. He testified at the suppression hearing that neither of them asked him why they had been stopped, which he considered unusual. Mr. Carpenter was driving with a reportedly suspended license; his demeanor changed, and he became more animated when he was asked about large sums of money, drugs, or weapons. Further observations concerning the trio were consistent with a drug-trafficker profile, such as a vehicle traveling between two known source areas of drug trafficking and a "lived-in" look to the vehicle. Finally, two of the occupants were each disclaiming ownership of the vehicle and stating that the other was the owner.
These factors established sufficient reasonable articulable suspicion to permit the officers to seize Defendant and his companions for the time it took Trooper Farabaugh to get the drug dog from his cruiser and walk it around the car. Once the dog alerted on the car, the officers had probable cause to believe that it contained drugs, and they were justified in holding Defendant and his companions while they searched the car. SeeState v. Carlson (1995), 102 Ohio App.3d 585, 600. In view of the fact that it was impossible for the officers to complete the search of the car along the highway because defendant and his companion claimed not to have access to the trunk, the officers did not violate Defendant's constitutional rights by transporting him to the Medina Highway Patrol Post. See State v. Carpenter,supra, at 8-9; State v. Kelly, supra, at 10. Based upon the aforementioned facts and the totality of the circumstances known to the officers, there was a reasonable, articulable suspicion of separate illegal activity to warrant continuing the detention.
 B.
In the second part of his suppression argument, Defendant claims that his vehicle was not lawfully detained when the dog sniff test was conducted, and that the dog exceeded the permissible scope of the test when it jumped through the open window into the passenger compartment. Based upon our disposition of the first part of Defendant's assignment of error in part A,supra, we have already determined that the continued detention of the vehicle and its occupants was lawful. We also find that the dog sniff test was legally conducted even where the dog, of its own volition, jumped inside the vehicle to follow the scent of drugs that it had detected.
The United States Supreme Court has held that a "canine sniff" is not a search within the meaning of the Fourth Amendment because it does not unreasonably intrude upon a person's reasonable expectation of privacy. See United States v. Place
(1983), 462 U.S. 696, 706-07, 77 L.Ed.2d 110, 120-21, State v.French, 104 Ohio App.3d at 749. This is so because "the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item." United States v. Place, 462 U.S. at 707,77 L.Ed.2d at 121. The use of a dog inside a car to sniff the interior is "no more intrusive than the use of [a] dog to sniff the outside of the car," because a dog is able to smell the presence of contraband without disturbing the possessions of the car's owner and occupants. State v. Palicki (1994), 97 Ohio App.3d 175, 181. Governmental conduct that will reveal nothing about noncontraband items does not impinge upon any legitimate expectations of privacy. United States v. Lingenfelter (C.A. 9, 1993),997 F.2d 632, 638; United States v. Colyer (C.A.D.C., 1989), 878 F.2d 469,475.
The actions of Amoros did not violate Defendant's Fourth Amendment rights because the use of a canine-sniff dog is suigeneris and does not constitute a search. See State v. Palicki,97 Ohio App.3d at 180; State v. Waldroup (1995), 100 Ohio App.3d 508,514. See, also, United States v. Berry (C.A. 6, 1996),90 F.3d 148, 153. Furthermore, probable cause existed for a search of the interior of the car because the troopers testified that the dog's behavior had already changed while it was still outside the car, indicating that it had smelled illegal drugs inside the vehicle. See State v. Palicki, 97 Ohio App.3d at 181.
Although Amoros' behavior in jumping inside the car may have been somewhat exuberant, it was not overly intrusive or illegal. Recently, the Sixth Circuit Court of Appeals did not find any illegal activity where the trained narcotics sniffing dog allegedly pulled or knocked open dresser drawers. See UnitedStates v. Reed (Apr. 15, 1998), U.S. Law Week No. 96-4174, 1998 WL 171349 at *6. The court found that such action was occasioned by the dogs "instinctive reactions to the nature of the contraband."Id. Other circuits have also found that, absent police misconduct, the instinctive acts of trained canines does not violate the Fourth Amendment. See United States v. Lyons (C.A. 8, 1992), 957 F.2d 615, 617 (dog tore open package containing cocaine); United States v. Stone (C.A. 10, 1989), 866 F.2d 359, 364
(dog jumped into the car's open hatchback).
Defendant's complaints concerning the drug dog's entry into the car do not merit suppression of the evidence.
 C.
Defendant also contends that the second search of the vehicle's trunk, which took place two days after the vehicle had been impounded and already searched, was not a proper inventory search. He maintains that it was merely a pretext for an unlawful evidentiary search for additional contraband.
A routine inventory search of a lawfully impounded vehicle is valid if it is aimed at securing or protecting the car and its contents. South Dakota v. Opperman (1976), 428 U.S. 364, 373,49 L.Ed.2d 1000, 1007. An inventory search may extend to the trunk of a vehicle. State v. Sykes (Aug. 31, 1988), Medina App. No. 1704-M, at 5.
The record demonstrates that the trooper conducted the inventory search of the vehicle in accordance with the written guidelines of the Ohio State Highway Patrol. However, even if we were to assume, arguendo, that the scope of the search went beyond a valid inventory search, it was nonetheless supported by probable cause. "A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search." United States v. Johns
(1985), 469 U.S. 478, 484, 83 L.Ed.2d 890, 897. See Michigan v.Thomas (1982), 458 U.S. 259, 261, 73 L.Ed.2d 750, 753. A second warrantless search of an impounded automobile, following an initial valid search of that vehicle which resulted in the seizure of evidence and the arrest of the defendant, does not violate the Fourth Amendment. Florida v. Meyers (1984), 466 U.S. 380, 382,80 L.Ed.2d 381, 384. Such a search for contraband, even when conducted three days after the vehicle is impounded, is not improper. See United States v. Johns, supra.
In the case at bar, there was ample probable cause to conduct a second warrantless search of the vehicle's trunk. The drug dog had alerted on the trunk. Marijuana had been found in the both the passenger compartment and in the trunk during the initial search. Defendant and the other occupants of Defendant's vehicle had been arrested for the possession of illegal drugs.
The trial court did not err in denying Defendant's motion to suppress the evidence discovered in Defendant's automobile. Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II AND III
In his second and third assignments of error, Defendant argues that the trial court erred in failing to grant his Crim.R. 29 motion for acquittal on the charges. Again, as in the cases of his co-defendants, we find that there was sufficient evidence of each element of the crimes charged to sustain a conviction. SeeState v. Carpenter, supra, at 14; State v. Kelly, supra, at 17.
Criminal Rule 29(A) provides that the trial court "shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
Defendant was convicted of violating Section 2925.03(A)(4) of the Ohio Revised Code, knowingly possessing marijuana in an amount in excess of bulk amount but less than three times that amount, and Section 2925.03(A)(9) of the Ohio Revised Code, knowingly possessing LSD in an amount in excess of one hundred times bulk amount. Possession may be actual or constructive. See State v.McShan (1991), 77 Ohio App.3d 781, 783. Constructive possession is demonstrated if the drugs are in the defendant's dominion and control. See id.; State v. Wolery (1976), 46 Ohio St.2d 316, 332.
It was eventually determined that Defendant was the rightful owner of the 1978 Oldsmobile that contained the drugs. Although he was a passenger when the vehicle was stopped in Ohio, he had been driving when the car was stopped for speeding in Pennsylvania earlier that day. Marijuana and LSD were found in the trunk of his car. The trunk was locked and Defendant and his companions asserted that no key existed. The trunk release in the glove box was disconnected. Yet, Defendant and his companions stated that their clothes were in the trunk and admitted to having had access to the trunk. Defendant lied to the troopers and denied ownership of the car, in what reasonably may have been considered by the jury as an attempt to distance himself from the vehicle and its contents. When confronted with the marijuana and told that they would be charged with trafficking, one of the defendants exclaimed that it was "our head smoke," implying ownership by all three. Viewing the evidence in a light most favorable to the prosecution, sufficient evidence existed to support the jury's verdict. A rational trier of fact could have found that Defendant was part of a scheme to transport marijuana and LSD across the country and that Defendant had access to and knowingly possessed those drugs.
Defendant's second and third assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Medina Common Pleas Court to carry this judgment into execution.
A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _________________________________ LYNN C. SLABY, FOR THE COURT
QUILLIN, J.
REECE, J., CONCUR