# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1371

_____

United States of America,

*Plaintiff - Appellee,*

v.

Javier Pulido-Ayala,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 16, 2017
Filed: June 5, 2018

_____

Before COLLOTON and GRUENDER, Circuit Judges, and READE,[1] District Judge.

_____

COLLOTON, Circuit Judge.

This appeal concerns whether police violated the Fourth Amendment rights of Javier Pulido-Ayala when a police drug dog instinctively lunged into Pulido-Ayala's vehicle. Police eventually found drugs in the car, and Pulido-Ayala entered a

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, sitting by designation.

conditional plea to a drug trafficking charge, reserving the right to appeal whether the evidence was the fruit of an unlawful search. Assuming for the sake of analysis that the dog's entry into the vehicle was a "search" under the Fourth Amendment, we conclude on the facts here that the search was justified by probable cause to believe that the car contained contraband. We therefore reject Pulido-Ayala's contention that evidence seized from the vehicle should have been excluded from a trial, and we affirm the judgment of the district court.[2]

## I.

The incident in question occurred after the Missouri Highway Patrol and Lafayette County Drug Task Force set up a ruse checkpoint to investigate drug trafficking on Interstate 70. Immediately before an exit ramp, law enforcement officers placed several signs that announced a fictitious drug checkpoint located a quarter-mile ahead. The chosen exit had no amenities, so drivers ordinarily would not leave the highway there for fuel or food.

On the morning of October 8, 2015, Detective Hammond of Lafayette County saw a red Mini Cooper traveling east on Interstate 70 in the left lane. Hammond testified that after the car passed the checkpoint signs, it made an "abrupt jerk" to the right lane and exited at "a high rate of speed." The vehicle changed lanes without using a turn signal, failed to obey the stop sign at the top of the exit ramp, and immediately returned to the highway on the other side, heading west and away from the fictitious checkpoint.

---

[2]The Honorable David Gregory Kays, Chief Judge, United States District Court for the Western District of Missouri, adopting the report and recommendation of the Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

Hammond notified colleagues, and two officers in a patrol car began to follow the Mini Cooper. The patrolmen activated their lights and siren to stop the vehicle. There were two men in the Mini Cooper; Pulido-Ayala was the driver. A state trooper brought Pulido-Ayala back to the patrol car. The second officer, Sanders, remained near the Mini Cooper and spoke with the passenger, Sandoval-Herrera, through the open front passenger's window.

About ten minutes after the stop, Patrol Sergeant McGinnis arrived at the scene with a drug dog named "Jampy" in his vehicle. Jampy was a German Shepherd trained to detect the odor of illegal narcotics with a track record of reliability over two years. After a brief conversation with Sanders and Sandoval-Herrera, McGinnis decided to employ Jampy to conduct a narcotics sniff.

Before retrieving the dog from his car, McGinnis asked Sandoval-Herrera whether he wanted to remain in the vehicle during the dog sniff or get out. Sandoval-Herrera asked to leave the car, and a video recording of the incident shows that he opened the door and walked away. As Sandoval-Herrera exited the car, Sanders had his hand on the door, and neither Sandoval-Herrera nor Sanders closed the door after Sandoval-Herrera was outside the vehicle.

McGinnis brought the canine to the rear of the Mini Cooper. He later testified that his intent was to start down the driver's side and to walk Jampy clockwise around the vehicle. McGinnis told Jampy to "find it"—the signal to begin the sniff—and the dog immediately pulled McGinnis toward the open door on the passenger's side. Jampy jumped into the car through the opening and "alerted" (*i.e.*, signaled the presence of drugs) at the fender area. McGinnis pulled the dog out of the opening and attempted to walk him clockwise around the vehicle. Again, Jampy snapped his head back and went through the open door, alerting at the same location. Based on the canine's alert, officers searched the Mini Cooper and found three kilograms of cocaine inside the fender of the vehicle.

A grand jury charged Pulido-Ayala with aiding and abetting possession with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2. Pulido-Ayala moved to suppress evidence obtained from the car on the ground that the search violated his rights under the Fourth Amendment. The district court denied the motion, reasoning that the officers had probable cause to search the Mini Cooper after Jampy instinctively jumped through the vehicle door and alerted. We review the district court's factual findings for clear error and the legal determinations *de novo*. *See United States v. Bloomfield*, 40 F.3d 910, 918 (8th Cir. 1994).

## II.

The use of a well-trained narcotics dog around the exterior of a vehicle that has been lawfully stopped "does not expose noncontraband items that otherwise would remain hidden from public view," *United States v. Place*, 462 U.S. 696, 707 (1983), and "generally does not implicate legitimate privacy interests." *Illinois v. Caballes*, 543 U.S. 405, 409 (2005). "Official conduct that does not 'compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment." *Id.* at 408 (quoting *United States v. Jacobsen*, 466 U.S. 109, 123 (1984)). Consequently, "[t]he use of the drug-sniffing dog on the exterior of a vehicle during a valid traffic stop" is not a search and "does not infringe upon any Fourth Amendment rights." *United States v. Williams*, 429 F.3d 767, 772 (8th Cir. 2005).

The inside of a car, however, is typically a different story. Police ordinarily cannot search the interior of an automobile unless they have probable cause to believe that the vehicle contains contraband or other evidence of a crime. *California v. Carney*, 471 U.S. 386, 392 (1985); *United States v. Ross*, 456 U.S. 798, 823 (1982). A drug dog is an instrumentality of the police, and the actions of "an instrument or agent" of the government normally are governed by the Fourth Amendment. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614 (1989). It is foreseeable that trained

canines will react instinctively to the scent of drugs, and Pulido-Ayala argues with some force that when police bring a dog to a scene with an open car door, and the dog enters a citizen's vehicle, the police have conducted a "search" within the meaning of the Fourth Amendment. *See United States v. Winningham*, 140 F.3d 1328, 1331 (10th Cir. 1998).

The government, citing prior decisions, suggests that if there is no "police misconduct," then the "instinctive action" of a trained police canine to enter a car does not violate the Fourth Amendment. In *United States v. Michael Lyons*, 957 F.2d 615 (8th Cir. 1992), this court did say that "[w]ithout misconduct by the police," a dog's "instinctive actions" in tearing open a package in an airline freight room did not constitute a "search." *Id.* at 617. In that case, however, the court continued by reasoning that the dog's alert alone, without the unintended opening of the package, would have given investigators probable cause to search the package, so the inevitable discovery doctrine justified admitting evidence of the package's contents. *Id.* Likewise, although *United States v. Kelvin Lyons*, 486 F.3d 367 (8th Cir. 2007), cited *Michael Lyons* for the proposition that "instinctive actions of a trained canine do not violate the Fourth Amendment," that decision too concluded that the challenged search inevitably would have occurred based on independent probable cause, even if the drug dog had not instinctively entered the defendant's vehicle. *Id.* at 373-74.

The district court thought the *Lyons* cases meant that "the officers' intent is dispositive," so that there was no search if Jampy acted instinctively and Sergeant McGinnis did not direct him to enter the car. But since the *Lyons* cases, the Supreme Court has emphasized that with two "limited exception[s]" for special-needs and administrative searches, the subjective intent of police officers is almost always irrelevant to whether an action violates the Fourth Amendment. *Ashcroft v. al-Kidd*, 563 U.S. 731, 736-37 (2011) (internal quotation marks omitted). There is reason to doubt, therefore, whether the district court's reading of the *Lyons* cases endures.

-5-

We need not explore the problem further in this case, because it is uncontroversial that if police had probable cause to search the car *before* the dog entered the interior, then any search effected by the entry was permissible. No warrant is required to search a car with probable cause. *Carroll v. United States*, 267 U.S. 132, 149 (1925). Here, the district court found that when Sergeant McGinnis commanded the canine to find drugs, the dog "immediately" pulled McGinnis toward the open passenger door. Given the strong reaction of the trained drug dog while it was *outside* the car, together with Pulido-Ayala's suspicious reaction to the drug checkpoint, we conclude that police had probable cause to believe that the vehicle contained contraband in the moment *before* Jampy actually crossed the threshold into the interior of the Mini Cooper. The dog's reaction outside Pulido-Ayala's car distinguishes this case from *Winningham*, where the court affirmed the suppression of evidence when a police dog moved around the exterior of a car, entered through an open door, and "methodically sniffed" the vehicle's interior before alerting at a rear vent. 140 F.3d at 1330.

Pulido-Ayala complains that Officer Sanders facilitated a search by leaving the car door open after the passenger, Sandoval-Herrera, climbed out. The district court found, without clear error, that while Sanders kept his hand on the passenger door after the passenger exited, it was Sandoval-Herrera who chose to get out of the car, and Sandoval-Herrera never touched the car door to shut it after he left the vehicle. We agree with the district court that the officers had no responsibility to close the door; they simply took the situation as they found it. Insofar as the dog's ability to perceive the odor of drugs from outside the car was enhanced by the open door, the situation was created voluntarily by the passenger, and there was no unlawful search in leaving the door open.

\* \* \*

The judgment of the district court is affirmed.

_____

-6-