**2024 WI APP 17**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:          2020AP1813-CR

Complete Title of Case:

**STATE OF WISCONSIN,**

   **PLAINTIFF-RESPONDENT,**

   **V.**

**ASHLEY JEAN CAMPBELL,**

   **DEFENDANT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | March 5, 2024 |
| Submitted on Briefs: | November 29, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Gill, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Colleen Marion*, assistant public defender of Madison. |
| Respondent<br>ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joshua L. Kaul*, attorney general, and *John A. Blimling*, assistant attorney general. |

COURT OF APPEALS
DECISION
DATED AND FILED

March 5, 2024

Samuel A. Christensen
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. 2020AP1813-CR

STATE OF WISCONSIN

Cir. Ct. No. 2018CM36

IN COURT OF APPEALS

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ASHLEY JEAN CAMPBELL,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Sawyer County: JOHN M. YACKEL, Judge. *Reversed and cause remanded with directions*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1 GILL, J. Law enforcement stopped a vehicle driven by Ashley Campbell. While an officer drafted citations for traffic infractions, another officer arrived with a police canine and ordered Campbell and her passenger out of the vehicle. As Campbell exited the vehicle, she left open her driver's side door.

¶2     The officer twice led the canine on a leash around the vehicle's exterior and, on each occasion, the canine entered through the open door and "alerted"[1] to the presence of narcotics in a purse located on the vehicle's floor. A subsequent search of the purse revealed suspected marijuana. Campbell argues that the canine's warrantless "searches" of the vehicle violated her rights under the Fourth Amendment to the United States Constitution, and that the circuit court erred by denying her motion to suppress the results of those searches.

¶3     We conclude that both of the canine's entries into Campbell's vehicle constituted searches under the Fourth Amendment. Therefore, the State was required to either obtain a warrant prior to the searches or rely upon an exception to the Fourth Amendment's warrant requirement in order to justify the warrantless searches. *See United States v. Jones*, 565 U.S. 400, 402 (2012).

¶4     The State asks this court to adopt the so called "instinct exception" to the Fourth Amendment's warrant requirement and hold that the exception applied to the canine's searches of the interior of Campbell's vehicle. Under the instinct exception, adopted by some other jurisdictions, canine searches that naturally extend into a vehicle during a traffic stop are constitutional if the canine conducts

---

[1] At the suppression hearing, Sawyer County Sheriff's Department Sergeant Nick Al-Moghrabi testified:

> So there is behavior, you know, if [the canine] is just sniffing around a certain area and won't leave it, that to me is showing, okay, [the canine] is showing some different signs than normal. Put them all together, the sniffing intently, the scratching at an item, the refusal to leave that item, that in itself is an alert. A final response which often people, they see a [canine] sit, for example, that is a final response. That doesn't mean that without a sit there is not an alert.

While some courts use the term "indicate" to refer to a canine's similar actions, we use the term "alert" in this case, as described by Al-Moghrabi.

the search "instinctively" and without an officer's direction, assistance, or encouragement. *See, e.g.*, *United States v. Pierce*, 622 F.3d 209, 214-15 (3d Cir. 2010).

¶5 We conclude that regardless of whether an "instinct exception" to the Fourth Amendment's warrant requirement exists when a canine "searches" a vehicle, the exception does not apply under the facts in this case to excuse the State's obligation to obtain a warrant prior to searching Campbell's vehicle. Here, the canine did not instinctively enter Campbell's vehicle because the officer had full control of the canine and implicitly encouraged it to enter through the driver's side door. We therefore conclude that even if the instinct exception were to be recognized in Wisconsin, the exception would not apply to the canine's searches in this case. We therefore reverse the judgment of conviction and remand with directions for the circuit court to grant Campbell's motion to suppress.[2]

### BACKGROUND

¶6 The State charged Campbell with one count of possession of tetrahydrocannabinols (THC) and one count of possession of drug paraphernalia. Campbell filed a motion to suppress all evidence that law enforcement collected following the canine's entries into her vehicle.

¶7 At that hearing, it was established that in 2017, Wisconsin State Trooper Mitchell Kraetke initiated a traffic stop of a vehicle after he noticed that the vehicle did not have a front license plate and the vehicle's passenger was not

---

[2] On the court's own motion, we converted this one-judge appeal to an appeal decided by a three-judge panel. *See* WIS. STAT. § 752.31(3) (2021-22); WIS. STAT. RULE 809.41(3) (2021-22).

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

wearing a seat belt. As Kraetke stopped the vehicle, he called for Sergeant Al-Moghrabi to arrive with his canine "for assistance." After making contact with the driver—Campbell—and her passenger, Kraetke conducted a records check and discovered that Campbell's license was suspended for failure to pay a forfeiture, and her passenger's license was revoked due to a prior operating a motor vehicle while intoxicated conviction.

¶8      Al-Moghrabi—the sole witness at the suppression hearing—testified that he was trained as a canine handler at the time of the traffic stop. According to Al-Moghrabi, his training was four months' long and "cover[ed] everything from obedience and [sic] apprehension work." He also stated that he and his canine had participated in required monthly training and that they had been certified together in "drug detection" since November 2013.

¶9      Al-Moghrabi testified that when he arrived at the traffic stop, he had a brief conversation with Kraetke, and he then approached Campbell's vehicle and asked Campbell and her passenger if there was any illegal contraband in the vehicle, to which both individuals answered in the negative. Al-Moghrabi then ordered both individuals out of the vehicle. After Campbell exited, she did not close her driver's side door, and it remained open. Kraetke then met with Campbell and her passenger behind the vehicle to discuss the traffic infractions.[3]

¶10      Al-Moghrabi then retrieved the canine from his vehicle. Al-Moghrabi stated that the canine was on a six-foot leash "with a pinch collar," and he "always" walks ahead of his canine on exterior scans of the side of a vehicle "so that [he] can

---

[3] It is undisputed that Campbell was not arrested until after the canine search and discovery of the suspected marijuana. For example, she was not placed under arrest for—or apparently ever charged with—operating a motor vehicle with a suspended driver's license. *See* WIS. STAT. § 343.05(3)(a).

slow [the canine's] search and make sure … [the canine] is not going to turn and have a car right there." Upon reaching Campbell's vehicle, Al-Moghrabi walked the canine around the open driver's side door and stopped at the hood of the vehicle. Al-Moghrabi testified that he then allowed the canine to "scan" the vehicle, beginning at the front of the vehicle and working toward the back. "Scanning," according to Al-Moghrabi, meant that he allowed the canine to sniff "by [it]self" rather than "pointing out certain areas for [the canine] to check." He also stated that the canine's leash was "slacked," which is confirmed by a dashboard camera video from Kraetke's squad car.

¶11 The dashboard camera video shows that Al-Moghrabi walked from the hood of Campbell's vehicle, around the open driver's side door, up to the door's entrance, and then stopped and allowed the canine to enter the vehicle. Notably, Al-Moghrabi's body was blocking the canine from continuing its "scan" of the vehicle's exterior. Furthermore, Al-Moghrabi was standing by the vehicle observing the canine—he was not pulling the leash or attempting to get the canine to exit the vehicle in any fashion. During this time, the canine's front two paws appeared to be on the driver's seat and its rear paws were on the pavement outside of the vehicle. After roughly ten seconds of the canine sniffing inside Campbell's vehicle, Al-Moghrabi stepped toward the road, but he still did not pull on the leash. Roughly five seconds later, the canine's front two paws voluntarily exited the vehicle so that all of its paws were on the pavement, but its head was still inside the vehicle, and Al-Moghrabi moved back to standing next to the vehicle with his body again blocking the canine from moving toward the rear of the vehicle.

¶12 For roughly six seconds, Al-Moghrabi appeared to watch the canine while he and the canine were both in this position. Then, the canine's front two paws moved back onto what appeared to be the driver's seat. Again, Al-Moghrabi

did not pull on the leash. The canine remained in this position for several seconds before exiting the vehicle completely, and Al-Moghrabi then led it around the rear of the vehicle. In total, the canine appeared to have its head in the vehicle for roughly thirty-eight seconds during this first entry into the vehicle's interior. Al-Moghrabi testified that while inside the vehicle, the canine started "sniffing intently at" a purse that was on the floor. According to Al-Moghrabi, that "behavior … is indicative" of an alert.

¶13 After the first entry, Al-Moghrabi directed the canine around the vehicle counterclockwise and back to the driver's side door. Upon walking around the driver's side door with the canine, Al-Moghrabi's actions mirrored his conduct during the first entry. That is, he walked the canine up to the door's opening, stopped and allowed the canine to enter the vehicle, and kept his body between the canine and the rear of the vehicle. During the second entry, the canine had its head inside the vehicle for roughly fifteen seconds. Al-Moghrabi did not pull on the leash at any point. He testified that upon the canine's second entry, the canine again began "sniffing intently" at the purse.

¶14 Afterward, Al-Moghrabi returned the canine to his vehicle. While Kraetke was talking to Campbell and her passenger, Al-Moghrabi again returned to the front passenger side of Campbell's vehicle where he searched the vehicle for the purse and located the suspected marijuana within the purse.

¶15 Following the motion hearing, the circuit court stated that it found Al-Moghrabi "credible … regarding what took place." Specifically, the court stated that: the driver's side door was left open after Al-Moghrabi ordered Campbell out of the vehicle; the canine was on a "loose leash"; and the canine entered the vehicle the first time "without any direction from law enforcement." The court, relying on

cases from outside of our jurisdiction, adopted the State's argument that there is an instinct exception to the Fourth Amendment's warrant requirement and that it applies "when a [canine] jumps instinctively through an open car door without any facilitation by its handler." The court determined that the exception applied to the canine's searches in this case and that the canine's entries into the vehicle did not violate the Fourth Amendment.

¶16    Campbell pled no contest to possession of THC, and the remaining charge was dismissed and read in. The circuit court imposed a $673.50 fine. Campbell now appeals.

## DISCUSSION

¶17    Our review of a circuit court's decision denying a motion to suppress evidence presents a question of constitutional fact. *State v. Iverson*, 2015 WI 101, ¶17, 365 Wis. 2d 302, 871 N.W.2d 661. We review the court's findings of historical fact under the clearly erroneous standard and independently apply constitutional principles to those facts. *Id.*, ¶18. The clearly erroneous standard of review also applies when the record consists of disputed testimony and a video recording. *State v. Walli*, 2011 WI App 86, ¶17, 334 Wis. 2d 402, 799 N.W.2d 898.

¶18    The Fourth Amendment to the United States Constitution provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV; *State v. VanBeek*, 2021 WI 51, ¶23, 397 Wis. 2d 311, 960 N.W.2d 32 ("The Wisconsin Constitution contains nearly identical protections, WIS. CONST. art. I, § 11, which we have interpreted consistent with its federal counterpart."). A warrantless search is presumptively unreasonable and it is constitutional only if it falls under an exception to the warrant requirement. *State*

*v. Tullberg*, 2014 WI 134, ¶30, 359 Wis. 2d 421, 857 N.W.2d 120. "The State bears the burden to prove that one of the exceptions to the warrant requirement applies." *State v. Abbott*, 2020 WI App 25, ¶12, 392 Wis. 2d 232, 944 N.W.2d 8. As we will explain, whether a "search" has taken place for purposes of the Fourth Amendment depends on whether a "common-law trespass" or whether an invasion of one's privacy interests has occurred. *See Carpenter v. United States*, 585 U.S. 296, 304 (2018).

¶19 Here, there is no question that the initial seizure of Campbell for alleged traffic violations was constitutional. *See State v. Houghton*, 2015 WI 79, ¶30, 364 Wis. 2d 234, 868 N.W.2d 143. Similarly, Al-Moghrabi was constitutionally permitted to order Campbell and her passenger out of the vehicle under the facts of this case. *See State v. Floyd*, 2017 WI 78, ¶24, 377 Wis. 2d 394, 898 N.W.2d 560. Further, Campbell does not contend that the traffic stop was impermissibly extended while the canine conducted an exterior sniff of her vehicle. *See State v. House*, 2013 WI App 111, ¶¶6-7, 350 Wis. 2d 478, 837 N.W.2d 645. The sole question on appeal is whether the canine's two entries into Campbell's vehicle constituted searches that violated the protections of the Fourth Amendment.[4] If so, under the facts of this case, we must reverse the judgment of conviction. *See id.*, ¶11.

## I. Both entries into Campbell's vehicle constituted searches

¶20 We first conclude that both of the canine's entries into Campbell's vehicle constituted searches within the meaning of the Fourth Amendment—a conclusion not expressly contested by the State on appeal. In *Illinois v. Caballes*,

---

[4] There is no dispute that if the canine's entries into the vehicle constituted searches, the searches were warrantless.

543 U.S. 405, 410 (2005), the United States Supreme Court determined on reasonable expectation of privacy grounds, *see* ***Katz v. United States***, 389 U.S. 347, 361 (1967) (Harlan, J., concurring), that a canine sniff of the *exterior* of a vehicle does not require a search warrant or probable cause to believe that a crime has been or is being committed because it is not a "search" within the Fourth Amendment. Later, our state supreme court affirmed that the holding in ***Caballes*** applied under the Wisconsin Constitution. ***State v. Arias***, 2008 WI 84, ¶¶16, 20-24, 311 Wis. 2d 358, 752 N.W.2d 748; *cf.* ***Rodriguez v. United States***, 575 U.S. 348, 355 (2015) (requiring reasonable suspicion to extend an otherwise-completed traffic stop). The court stated that "the occupant of a vehicle has no reasonable expectation of privacy in the air space surrounding a vehicle that he [or she] is occupying in a public place." ***Arias***, 311 Wis. 2d 358, ¶22.

¶21    We conclude, however, that Campbell had a property interest in the interior of her vehicle under the common-law trespassory test.[5]  *See* ***Florida v. Jardines***, 569 U.S. 1, 11 (2013) ("One virtue of the Fourth Amendment's property-rights baseline is that it keeps easy cases easy."). In ***Jones***, the United States Supreme Court held that where "the Government obtains information by physically intruding on a constitutionally protected area … a search has undoubtedly occurred." ***Jones***, 565 U.S. at 404-06 & n.3. In that case, the Court determined that by attaching a GPS device to the exterior of someone's vehicle in order to track that

---

[5]  As we will discuss, some cases from other jurisdictions that applied the instinct exception before ***United States v. Jones***, 565 U.S. 400 (2012), or ***Florida v. Jardines***, 569 U.S. 1 (2013), decided that no "search" occurs when a canine enters an individual's vehicle if the entry is through an open component of the vehicle (e.g., a door or window) because the individual lacked a reasonable expectation of privacy. *See, e.g.*, ***United States v. Stone***, 866 F.2d 359, 360-62 (10th Cir. 1989). Cases that have analyzed the exception since ***Jones*** and ***Jardines*** have generally found that a canine's entry into a vehicle in that manner is a search but that, if the instinct exception is adopted, the search is excepted from the warrant requirement and is valid. *See, e.g.*, ***United States v. Guidry***, 817 F.3d 997, 1006 (7th Cir. 2016).

person's movements, the "Government physically occupied private property for the purpose of obtaining information. We have no doubt that such a physical intrusion would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted." *Id.* at 402, 404-05. The individual's vehicle was protected under the Fourth Amendment regardless of whether the individual had a reasonable expectation of privacy under the *Katz* test. *Jones*, 565 U.S. at 406-07.

¶22    Similarly, in *Jardines*, the United States Supreme Court affirmed the property interests approach in *Jones* and stated that the Fourth Amendment "establishes a simple baseline, one that for much of our history formed the exclusive basis for its protections: When 'the Government obtains information by physically intruding' on persons, houses, papers, or effects, 'a search within the original meaning of the Fourth Amendment' has 'undoubtedly occurred.'" *Jardines*, 569 U.S. at 5 (citation omitted). Furthermore, *Jardines* established that law enforcement cannot evade the Fourth Amendment by using a canine because "[i]t is not the [canine] that is the problem, but the behavior that here involved the use of the [canine]." *See id.* at 9 n.3, 11; *see also United States v. Pulido-Ayala*, 892 F.3d 315, 318 (8th Cir. 2018) ("A drug [canine] is an instrumentality of the police, and the actions of 'an instrument or agent' of the government normally are governed by the Fourth Amendment." (citing *Skinner v. Railway Labor Execs.' Ass'n*, 489 U.S. 602, 614 (1989))).

¶23    Here, there is uncontroverted evidence that the canine—a trained member of law enforcement—twice entered Campbell's vehicle as opposed to staying at its exterior. That is to say, the canine twice crossed the threshold from the exterior of the vehicle to the interior of the vehicle. Law enforcement undoubtedly gained information by physically intruding into one of Campbell's

10

"effect[s]," thus both entries constitute searches within the meaning of the Fourth Amendment. *See Jones*, 565 U.S. at 404 ("It is beyond dispute that a vehicle is an 'effect' as that term is used in the [Fourth] Amendment.").

## II. The State does not argue that any recognized exception to the warrant requirement applies

¶24     Having concluded that two searches of Campbell's vehicle occurred, we must next consider whether the searches were permissible under an exception to the Fourth Amendment's warrant requirement. *See Tullberg*, 359 Wis. 2d 421, ¶30. The State does not argue that any recognized exception to the warrant requirement applies to the searches in this case. For example, the State does not assert that Campbell consented to an interior search of her vehicle. *See State v. Wantland*, 2014 WI 58, ¶20, 355 Wis. 2d 135, 848 N.W.2d 810.

¶25     Furthermore, the State does not argue that the "automobile exception" to the warrant requirement applies under the facts of this case. Under the automobile exception, law enforcement may conduct a warrantless search of a vehicle if probable cause exists to believe that the vehicle contains evidence of criminal activity. *State v. Lefler*, 2013 WI App 22, ¶14, 346 Wis. 2d 220, 827 N.W.2d 650.

¶26     Here, it is undisputed that law enforcement had *no* reason to believe that Campbell or her passenger possessed illegal contraband prior to the canine entering the vehicle. The canine did not alert to the presence of "narcotics" until after it had searched the interior of Campbell's vehicle the first time. Because law enforcement did not have the requisite probable cause for the first search of the vehicle's interior, it could not use the information gained from that search to form a constitutional basis for the second search. *See State v. Knapp*, 2005 WI 127, ¶24, 285 Wis. 2d 86, 700 N.W.2d 899 ("The exclusionary rule applies to both tangible

and intangible evidence and also excludes derivative evidence under certain circumstances, via the fruit of the poisonous tree doctrine, if such evidence is obtained 'by exploitation of that illegality.'" (citation omitted)). Therefore, law enforcement lacked probable cause to believe that evidence of illegal drugs would be found in the vehicle to make the searches valid without a warrant.

## III. The instinct exception generally

¶27 Having failed to satisfy any well-established exception to the Fourth Amendment's warrant requirement, the State now asserts that we should adopt the instinct exception recognized by some other jurisdictions. Under the State's interpretation of the cases applying that exception, no reasonable suspicion or probable cause of there being evidence of a crime, or exception to the warrant requirement, such as exigent circumstances, is required for a lawful search under this exception. According to the State, the exception applies when a "canine enters a suspect's vehicle without the direction or facilitation of his handler" and is acting "instinctively." A canine is acting instinctively, says the State, if it is "(a) seeking out an odor that it is trained to seek out; or (b) pursuing a scent that it already detected outside the vehicle."

¶28 The instinct exception traces back to *United States v. Stone*, 866 F.2d 359, 360-62 (10th Cir. 1989), where an officer stopped a vehicle driven by Stone for speeding, which was Stone's second traffic stop of the day. At the time of the stop, law enforcement had reasonable suspicion that Stone possessed narcotics. Namely, an officer who had previously stopped Stone that day had "smelled an odor he thought was either cocaine or crystal methadrine coming from the car," and law enforcement received information from a federal agent that Stone was under surveillance for drug trafficking. *Id.* at 360. The officer who stopped Stone the

second time asked to see the previous citation issued by the first officer. *Id.* at 361. At the officer's direction, Stone opened the vehicle's hatchback and showed the officer the citation. *Id.* During a conversation between Stone and other officers who had arrived at the traffic stop, another officer arrived with a canine. *Id.* "The [canine] circled the car, showed interest underneath the rear area of the car and at the passenger door, and then jumped in the open hatchback where [it] 'keyed' on a duffel bag" that was subsequently searched and found to contain narcotics. *Id.* According to the officer handling the canine, the officer "just let [the] leash go and let [the canine] go where [its] nose would take [it]." *Id.* at 364.

¶29 On appeal, the United States Court of Appeals for the Tenth Circuit concluded that the canine's "instinctive actions" did not constitute a "search" within the meaning of the Fourth Amendment because: (1) there was no evidence that the police asked Stone to open his vehicle's hatchback so that the canine could enter it; (2) the canine's handler did not "encourage[] the [canine] to jump in the car"; and (3) the police had "reasonable suspicion to believe [the] automobile contain[ed] narcotics." *Id.* at 363-64. The court concluded, "In these circumstances … the police remained within the range of activities they may permissibly engage in when they have reasonable suspicion to believe an automobile contains narcotics." *Id.* at 364.

¶30 Later, in *United States v. Winningham*, 140 F.3d 1328, 1329 (10th Cir. 1998), the Tenth Circuit addressed a similar issue that arose when New Mexico border patrol agents stopped a van "on the reasonable suspicion it might be carrying undocumented aliens." The driver, Winningham, consented to a search of the van. *Id.* One of the agents opened the van's sliding door but did not see any individuals inside. *Id.* The agent left the door open, and Winningham agreed to allow an agent to "run a [canine] on [the] vehicle." *Id.* (second alteration

in original). Ultimately, the canine's handler unleashed the canine, and the canine entered the van through the open door. The canine indicated to the presence of drugs after a "methodical[] sniff[ing] [of] the van's interior," and agents located marijuana during their subsequent search of the van. *Id.* at 1329-30.

¶31 Distinguishing *Stone*, the Tenth Circuit held that the instinct exception did not apply to the canine's sniffing of Winningham's van's interior because: (1) the agents left the van door open; (2) the canine's handler unleashed the canine; and (3) the agents lacked reasonable suspicion after the agent visually searched the interior and did not see any individuals. *Winningham*, 140 F.3d at 1331. According to the court, the agents' actions "creat[ed] the opportunity" for the canine to enter the van and demonstrated a "desire to *facilitate* a [canine] sniff of the van's interior." *Id.* at 1331 & n.2. The court stated that "[b]ecause the range of acceptable police activity in the absence of reasonable suspicion may differ considerably from the range of acceptable police activity in the presence of reasonable suspicion, we see no reason to find *Stone* controlling here." *Winningham*, 140 F.3d at 1331. Thus, both *Stone* and *Winningham* require that law enforcement have at least reasonable suspicion that a crime is being committed in order for the instinct exception to apply.[6]

---

[6] Other jurisdictions have applied the instinct exception only where probable cause exists prior to a canine's entry into a vehicle (essentially, the inevitable discovery doctrine). For example, in *United States v. Guidry*, 817 F.3d 997, 1001 (7th Cir. 2016), police lawfully stopped a driver, Guidry, for a traffic offense. Guidry complied with an order to exit his vehicle for an exterior canine search, and in doing so he left the driver's side door open. *Id.* at 1001. The canine "indicated" to the presence of drugs while passing the exterior of the open door. *Id.* at 1002. The canine then "approached the car, and, according to Guidry, put his head into the car through the open door." *Id.* Police searched the vehicle and located drugs. *Id.*

¶32    The State contends that reasonable suspicion is not a prerequisite to the instinct exception.  In support, it argues that *Stone* and *Winningham* predated *Caballes* (holding that a canine's exterior sniffing of a vehicle is not a search within the Fourth Amendment) and *Rodriguez*, 575 U.S. at 355, 357 (requiring reasonable suspicion to extend an otherwise-completed traffic stop).  According to the State, "while *Stone* and *Winningham* can be read as placing an emphasis on the presence of reasonable suspicion, the State would argue that the discussions of reasonable suspicion therein primarily go to the principles later espoused in *Caballes* and *Rodriguez* rather than the applicability of the instinct exception."  We disagree with this assessment of the current state of the law.  The State would have us overlook the case law since *Caballes* and *Rodriguez* that has continued to require reasonable suspicion in order to apply the instinct exception.  *See, e.g.*, *United States v. Humphries*, 504 F. Supp. 3d 464, 471-72 (W.D. Pa. 2020).

¶33    We agree with the State, however, that not all jurisdictions have required (at least not expressly) that reasonable suspicion or probable cause be present for the instinct exception to apply, as long as law enforcement did not encourage the canine to enter a vehicle (or other effect).  *See, e.g.*, *North Carolina v. Miller*, 766 S.E.2d 289, 295-96 (N.C. 2014); *Iowa v. George*, No. 15-1736, 2016 WL 6636750, at *4-5 (Iowa Ct. App. Nov. 9, 2016); *Utah v. Beames*, 2022 UT App

---

On appeal, the Seventh Circuit determined that the canine's entry into the vehicle was a "search," but that the search was lawful because there was "no indication that the officers intended to facilitate the [canine]'s entry into the car." *Id.* at 1006.  Specifically, the canine handler kept the canine on a leash "and did not allow him to jump into the car," and "despite [the officer's] efforts to keep [the canine] outside of the car, his head allegedly entered." *Id.*  Also, the court found it relevant that Guidry, not law enforcement, left the driver's side door open. *Id.*  "As important, at the point that [the canine's] head supposedly entered [the vehicle], the officers had probable cause to search the interior because [the canine] indicated that the car contained drugs while sniffing the car's perimeter." *Id.*; *see also* *United States v. Lyons*, 486 F.3d 367, 371-74 (8th Cir. 2007); *United States v. Pierce*, 622 F.3d 209, 211-15 (3d Cir. 2010).

61, ¶¶19-20, 511 P.3d 1226; *United States v. Mostowicz*, No. 11-11900, 2012 WL 2161269, at *3 (11th Cir. June 14, 2012).

¶34 In total, our review of cases from other jurisdictions that adopted the instinct exception shows that those jurisdictions recognize two lawful situations in which a canine entered a vehicle instinctively. First, a canine may follow a scent it previously detected and alerted to outside of a vehicle. In this situation, some courts will not suppress evidence because there was probable cause to enter the vehicle and, therefore, the inevitable discovery exception applies.[7] Some of those jurisdictions, however, have not addressed the exception in the absence of probable cause.

¶35 Second, and as was the situation in Campbell's case, a canine enters a vehicle without previously detecting an exterior scent (or without alerting law enforcement to an exterior scent). Some jurisdictions do not require reasonable suspicion of the existence of narcotics to be present prior to the canine's entry, while others do. Regardless of whether courts require reasonable suspicion or not, in order for the instinct exception to apply, courts have consistently required the government to demonstrate that law enforcement did not assist, facilitate, or create an opportunity for the canine to enter the vehicle's interior.

## IV. The State failed to satisfy the instinct exception

¶36 Even if we assume, without deciding, that the instinct exception properly existed under Wisconsin law, we conclude that the canine's searches of

---

[7] The State contends that requiring probable cause "could actually benefit [a driver] from making it easier for a police canine to enter the vehicle, as evidence that would have been uncovered anyways would become excludable without the instinct exception." We are unpersuaded by this argument because the State overlooks the inevitable discovery doctrine, which is a recognized exception to the exclusionary rule in this state. *See State v. Jackson*, 2016 WI 56, ¶¶4-6, 369 Wis. 2d 673, 882 N.W.2d 422.

Campbell's vehicle would not fall under the instinct exception as described in other jurisdictions' case law, and thus the searches here violated Campbell's Fourth Amendment rights. This conclusion is true even if we were to adopt the approach of some jurisdictions that do not require reasonable suspicion or probable cause of the existence of narcotics prior to the canine's entry.[8]

¶37    Here, the circuit court's finding that the canine entered Campbell's vehicle without *any* direction from Al-Moghrabi is clearly erroneous. *See **Walli***, 334 Wis. 2d 402, ¶17. The dashboard camera video is clear that while Al-Moghrabi did not directly order or command the canine to enter the vehicle, he permitted and facilitated its entry. The canine's searches in this case are similar to the search in ***Winningham***, where law enforcement's actions "creat[ed] the opportunity" for the canine to enter the van and demonstrated a "desire to *facilitate* a [canine] sniff of the van's interior." *See **Winningham***, 140 F.3d at 1331 & n.2.

¶38    Specifically, Al-Moghrabi had the canine on a six-foot leash with a pinch collar and therefore was able to exercise full control over the canine's actions. Of significance, Al-Moghrabi and the canine were trained in 2013 to conduct "drug detection" and they had participated in monthly training since that time. This training included canine "obedience" training. When Al-Moghrabi walked the canine around Campbell's vehicle, he stopped at the open driver's side door and allowed the canine to enter. Notably, at that point, Al-Moghrabi's body was blocking the canine from continuing its scan of the vehicle's exterior. Also,

---

[8] It is undisputed that law enforcement lacked reasonable suspicion to believe that illegal items would be found in Campbell's vehicle at the time of the canine's first searches, and, as discussed above, any reasonable suspicion gained from the first illegal search cannot be used to justify the second warrantless search. Further, there is no evidence in the record to support a conclusion that the suspected marijuana found in Campbell's vehicle would have inevitably been located. *See, e.g.*, ***Lyons***, 486 F.3d at 371-73.

Al-Moghrabi was simply observing the canine. He did not attempt to pull on the leash to remove the canine from the vehicle, and there was no evidence at the suppression hearing that he verbally instructed the canine—a highly trained law enforcement tool—to get out of the vehicle. Instead, he permitted the canine to stay in the vehicle for roughly thirty-eight seconds during the first search. Furthermore, there was a second search that occurred under nearly identical circumstances. The searches in this case are far from the type of situation that occurs when a canine freely breaks away from human control and investigates without assistance. Thus, we cannot conclude as a matter of law that, under these facts, the instinct exception applies.

¶39    Thus, even if Wisconsin recognized the instinct exception to the warrant requirement—and even if the exception does not require reasonable suspicion or probable cause of narcotics inside the effect to be searched—the State failed to meet its burden of demonstrating that the exception would apply to the circumstances of the canine's searches of Campbell's vehicle. We therefore reverse the judgment of conviction and remand with instructions for the circuit court to grant Campbell's motion to suppress.

        *By the Court.*—Judgment reversed and cause remanded with directions.